**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 20-6351**

_____

BERMAN JUSTUS, JR.,

                  Petitioner - Appellant,

      v.

HAROLD W. CLARKE,

                  Respondent - Appellee.

_____

Appeal from the United States District Court for the Western District of Virginia, at Roanoke. Norman K. Moon, Senior District Judge. (7:13-cv-00461-NKM-JCH)

_____

Argued: May 3, 2022                               Decided: August 15, 2023

_____

Before, NIEMEYER, GREGORY, and HARRIS, Circuit Judges.

_____

Reversed and remanded by published opinion. Judge Gregory wrote the opinion, in which Judge Harris joined. Judge Niemeyer wrote a dissenting opinion.

_____

**ARGUED:** Kelly A. Warlich, MCGUIREWOODS LLP, Charlotte, North Carolina, for Appellant. Rohiniyurie Tashima, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Mark R. Herring, Attorney General, K. Scott Miles, Deputy Attorney General, Michelle S. Kallen, Solicitor General, Brittany M. Jones, Deputy Solicitor General, A. Anne Lloyd, Deputy Solicitor General, Laura H. Cahill, Assistant Attorney General, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

_____

GREGORY, Circuit Judge:

In November 2003, Berman Justus, Jr. shot and killed his estranged wife, Amanda Justus, in the front seat of her car while their four-year-old son sat in the back. As part of the same incident, Justus also shot and killed Amanda's boyfriend, Joe White. Justus was charged with capital murder, among other charges. The trial court rejected Justus's insanity defense but cited his "severe mental illness" as a mitigating factor in declining to impose the death penalty.

Justus subsequently attempted to collaterally attack his 2007 convictions and sentence in state court. After his state habeas petitions were dismissed, Justus sought habeas relief in federal court. The district court dismissed Justus's 2013 federal habeas petition as untimely and for failure to present any arguments in support of equitable tolling.

Five years later, Justus moved for reconsideration of the petition's dismissal pursuant to Federal Rule of Civil Procedure 60(b) on the ground that his "multiple mental health disabilities . . . had prevented him from effectively petitioning the court for habeas relief." J.A. 238. The district court dismissed Justus's Rule 60(b) motion and this appeal followed. We issued a certificate of appealability, which noted that Justus's Rule 60(b) motion was timely. For the reasons that follow, we reaffirm that Justus's Rule 60(b) motion was timely filed and find that he is entitled to an evidentiary hearing on whether his mental illness during the relevant period entitled him to relief under Rule 60(b)(6) and equitable tolling of the statute of limitations governing his habeas petition.

2

I.

Following his arrest for the murders of his ex-wife and her boyfriend, Justus was twice found incompetent to stand trial, and was twice admitted to Central State Hospital for treatment to restore his competency. He was first admitted from April 21, 2004, to October 5, 2004, and then again from November 20, 2005, to June 1, 2006. There he was diagnosed with Schizoaffective Disorder, but this diagnosis was later changed to Bipolar Disorder (Most Recent Episode Mixed, with Psychosis). These two diagnoses are functionally similar, and psychosis is a symptom of both conditions.

On January 23, 2007, after a bench trial, the Circuit Court of Greene County, Virginia convicted Justus of capital murder, using a firearm while committing capital murder, shooting into an occupied vehicle, first-degree murder, and using a firearm while committing murder. He was sentenced to two life terms plus eighteen years. Justus argued at trial that he was acting on the delusion that God commanded him to kill his ex-wife and her boyfriend. The court rejected Justus's insanity defense but at sentencing cited his "severe mental illness . . . at some point during the period of these offenses" and his "complete lack" of "criminal history" or a "history of violence" to explain its decision to impose a life sentence rather than death. J.A. 182

Following his 2007 conviction, Justus received mental health treatment from the Department of Corrections between, at least, May 2007 and August 2008. The treatment record from this interval describes periods of noncompliance with treatment during which Justus experienced depression and psychotic symptoms as well as hypervigilance. Justus later resumed treatment between April and August 2016 after an unspecified period of time

3

without receiving treatment.[1]  The record includes no treatment records between September 2008 and April 2016 or after August 2016, but it includes two 2019 affidavits from Justus and his mother which purport, in part, to describe his mental state between January 2007 and January 2009.  In his affidavit, Justus explains that he has "in[s] and outs," which he defines as "time periods where I'm dealing with things in a present sense and times when I'm not," and that he "can get stressed and have to push everything away."  J.A. 185–86.

Justus filed a timely appeal challenging the Circuit Court's rejection of his insanity defense, which the Court of Appeals of Virginia denied on November 30, 2007.  In support of its ruling, the Court of Appeals cited contradictory testimony given by Justus on the day he was arrested that "he denied having a sense of purpose to kill Justus and White" and that "he had shot [his wife] because she was keeping their son from him."  J.A. 42–43.  The Court of Appeals also cited the testimony of two trial experts, neither of whom was willing to opine that Justus was insane at the time of the killings.  Dr. Evan Nelson stated that he believed that Justus had not become psychotic until after the murders, and Dr. William Stejskal explained that he thought Justus exhibited features of psychosis at the time of the offenses but had no opinion on the subject "to a reasonable degree of professional certainty."  J.A. 41.  Because eighteen pages of the trial transcript were missing, including the portion of the transcript in which Justus described the delusion he claims caused him to kill his victims, the court did not consider Justus's testimony regarding his delusion.

---

[1] An April 2016 doctor's note states that Justus, who was "new to [River North Correctional Center]," "has been off meds much more than on meds." J.A. 225.  It further notes that "he has been incarcerated since 2007 and has not been in mental health treatment" even though the record includes treatment records from 2007–2008. *Id.*

4

No subsequent appeal was filed in the Supreme Court of Virginia. On May 26, 2008, Justus's counsel, J. Lloyd Snook, III, sent him a letter explaining that the Court of Appeals had denied his appeal in part because of the eighteen missing transcript pages and apologizing for failing to timely inform him of "the problem." J.A. 54. Snook also revealed that although he had prepared a petition for appeal of Justus's conviction to the Supreme Court on December 23, 2007, and arranged for his paralegal to mail it, he had discovered that the petition was never filed. Snook explained that the paralegal's employment ended in January 2008 and that he did not become aware of the oversight until May 2008. As confirmed by prison mail records, Justus never received this letter.

On May 18, 2010, Justus filed a bar complaint against his attorney for failing to include the missing transcript pages and failing to inform him that his appeal had been dismissed. Only after filing his bar complaint did Justus become aware of Snook's 2008 letter. The bar dismissed his complaint because it found that Snook had "explained fully" each of the concerns. J.A. 51. Justus filed a second bar complaint in January 2012, but the bar again declined to take further action. The record includes a March 2012 affidavit from Snook admitting responsibility for failing to perfect Justus's appeal to the Supreme Court of Virginia and explaining that he did not consult with Justus regarding the appeal "[b]ecause of [Justus's] mental state and the difficulties in communicating with him." J.A. 109–10.

Meanwhile, on November 17, 2010, Justus filed a pro se state habeas petition. It was dismissed as untimely, and Justus did not appeal. Justus filed a second pro se state habeas petition on June 28, 2012, which was again denied, and the Supreme Court of Virginia denied his petition for appeal on June 20, 2013.

5

Justus then filed a pro se 28 U.S.C. § 2254 petition dated September 24, 2013, alleging ineffective assistance of counsel based on his counsel's failure to perfect his 2007 appeal to the Supreme Court. The district court advised Justus that his petition appeared untimely and requested additional argument or evidence regarding its timeliness. Justus responded to the order but did not address the court's timeliness concern. On June 6, 2014, the court dismissed Justus's petition. The court explained that even excluding the periods during which Justus's state habeas petitions were pending,[2] his filing delay exceeded the applicable one-year period. Specifically, the district court found that the federal statute of limitations for Justus's federal habeas petition ran (1) from May 18, 2010, to November 17, 2010; (2) from March 30, 2011, to June 28, 2012; and (3) from June 20, 2013, to September 24, 2013. Thus, the district court found that the statute of limitations clock on Justus's federal habeas petition ran for 735 days—370 days longer than the one-year statute of limitations. Since Justus had "not demonstrated any grounds for equitable tolling," the court found that his petition was time-barred. J.A. 163.

Five years later, in August 2019, Justus filed a pro se Rule 60(b) motion for reconsideration of the dismissal of his federal habeas petition on the basis that his mental illness had prevented him from filing it timely. In support of this motion, he provided treatment records and an affidavit. The district court denied the motion on February 28, 2020.[3] The

---

[2] In applying statutory tolling to Justus's state habeas petitions, the court made several assumptions in Justus's favor, including that both state petitions were properly filed.

[3] The district court only considered the motion under subsection (6) of Rule 60(b) because it was "the only subsection Justus appears to invoke." J.A. 239.

6

court explained that Justus was required to make a showing of "extraordinary circumstances" to qualify for Rule 60(b)(6) relief, J.A. 239, but found "that he has not made the kind of 'extraordinary' showing to entitle him to equitable tolling." J.A. 241.

Justus appealed on March 12, 2020. In an order dated September 24, 2020, we granted a certificate of appealability (COA) concerning "whether Justus should be entitled to equitable tolling regarding his habeas petition." Order 1, Sept. 24, 2020, ECF No. 11. We also found that Justus's Rule 60(b) motion was timely, despite the five-year period between the district court's habeas decision and the motion, "[g]iven the extensive evidence documenting Justus's severe mental disabilities." *Id.*

## II.

We begin by addressing some confusion regarding the procedural posture of this case and the proper standard of review for us to apply. Both parties here failed to recognize that the appropriate standard of review is the standard applicable to denials of Rule 60(b) motions, not the standard applicable to a direct appeal of a district court's denial of equitable tolling. To be fair, our previous order granted a COA as to the issue: "whether Justus should be entitled to equitable tolling regarding his habeas petition."[4] *Id.* The briefing from both parties, therefore, understandably explored this issue. But we are not omnipotent, and our framing of the COA does not change the procedural posture of this

---

[4] The district court similarly identified "[t]he issue now before" it as "whether [Justus] was entitled to equitable tolling as a result of his mental condition." J.A. 240.

7

case. Accordingly, we review a district court's denial of a Rule 60(b) motion for abuse of discretion. *Browder v. Dir., Dep't of Corrs. of Ill.*, 434 U.S. 257, 263 n.7 (1978).

## III.

A federal habeas petitioner may be entitled to equitable tolling of the one-year statute of limitations established in the Antiterrorism and Effective Death Penalty Act (AEDPA) "where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result." *United States v. Sosa*, 364 F.3d 507, 512 (4th Cir. 2004). To establish grounds for equitable tolling, a petitioner must show "(1) that he has been pursuing his rights diligently, *and* (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (emphasis added and cleaned up). "The diligence required for equitable tolling purposes is reasonable diligence, not maximum feasible diligence." *Id.* at 653 (cleaned up). And "under our existing 'extraordinary circumstances' test, [a petitioner] is only entitled to equitable tolling if he presents (1) extraordinary circumstances, (2) beyond his control or external to his own conduct, (3) that prevented him from filing on time." *Rouse v. Lee*, 339 F.3d 238, 246 (4th Cir. 2003). We review a district court's denial of equitable tolling in the habeas context for an abuse of discretion unless the relevant facts are undisputed, in which case we review the decision de novo. *Id.* at 247–48. And we review a district court's decision not to hold an evidentiary hearing in a post-conviction proceeding for an abuse of

8

discretion.  *Crockett v. Clarke*, 35 F.4th 231, 245 n.6 (4th Cir.2022) (citing *Gordon v. Braxton*, 780 F.3d 196, 204 (4th Cir. 2015)).

Justus filed his Rule 60(b) motion seeking reconsideration of the denial of his habeas petition where the court concluded he made no argument for equitable tolling of the AEDPA statute of limitations.  Rule 60(b)(6) "provides the court with a grand reservoir of equitable power to do justice in a particular case."  *Reid v. Angelone*, 369 F.3d 363, 374 (4th Cir. 2004) (quoting *Eberhardt v. Integrated Design & Constr., Inc.*, 167 F.3d 861, 872 (4th Cir. 1999)).  And we have explained that "there are strong equitable considerations favoring [Rule 60(b)] motions in habeas cases, given the stringent requirements a prisoner must satisfy to file a successive habeas application."  *Id.*

"Rule 60(b) allows a court to 'relieve a party . . . from a final judgment, order or proceeding' on a limited number of grounds."  *Wells Fargo Bank, N.A. v. AMH Roman Two NC, LLC*, 859 F.3d 295, 299 (4th Cir. 2017) (quoting Fed. R. Civ. P. 60(b)).  "To prevail, a party must first demonstrate (1) timeliness,[5] (2) a meritorious defense,[6] (3) a lack

---

[5] "A motion under Rule 60(b) must be made within *a reasonable time*—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding."  Fed. R. Civ. P. 60(c)(1) (emphasis added).

[6] We have explained that "[t]he underlying concern" of this prong is "whether there is *some possibility* that the outcome . . . after a full trial will be contrary to the result achieved by the default."  *Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988) (emphasis added) (quoting 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2697 (2d ed. 1983)); *see also United States v. Harris*, 268 F. Supp. 2d 500, 504 (E.D. Pa. 2003) (considering a Rule 60(b) motion in a habeas case and explaining that a petitioner must show that "vacating the judgment will not be an empty exercise." (quoting *Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co.*, 953 F.2d 17, 20 (1st Cir. 1992)).

9

of unfair prejudice to the opposing party,[7] and (4) exceptional circumstances." *Id.* (citing *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)). Once a party has met this threshold, he must then show that he qualifies for relief under one of the six specific categories listed in Rule 60(b). *Dowell*, 993 F.2d at 48. Two of these categories are relevant to our analysis. The first category provides relief in instances of "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). The other is Rule 60(b)(6), a "catch-all provision" that permits relief for "any other reason that justifies relief." *Moses v. Joyner*, 815 F.3d 163, 167–68 (4th Cir. 2016) (quoting Fed. R. Civ. P. 60(b)(6)). Indeed, Rule 60(b)(6) "gives a court authority to relieve a party from a judgment for any other reason not articulated in sections (1) through (5), but only when the movant demonstrates extraordinary circumstances." *Wells Fargo Bank*, 859 F.3d at 299. The Supreme Court, however, has limited the application of Rule 60(b)(6) to cases where "such action is appropriate to accomplish justice," *Klapprott v. United States*, 335 U.S. 601, 615 (1949), and that "involve[e] extraordinary circumstances," *Dowell*, 993 F.2d at 48 (citing *Ackermann v. United States*, 340 U.S. 193, 202 (1950)).

## IV.

The district court denied Justus's Rule 60(b) motion because it found that "he ha[d] not made the kind of 'extraordinary' showing to entitle him to equitable tolling." J.A. 241–42. In

---

[7] We have held, however, that this factor "is of lesser importance." *Nat'l Credit Union Admin. Bd. v. Gray*, 1 F.3d 262, 265 (4th Cir. 1993); *see also Compton v. Alton Steamship Co.*, 608 F.2d 96, 102 (4th Cir.1979) ("[T]he court should in every case give some, though not controlling, consideration to the question whether the party in whose favor judgment has been entered will be unfairly prejudiced by the vacation of his judgment.").

the alternative, the court also explained in a footnote that it found Justus's Rule 60(b) motion untimely. J.A. 241 n.3 ("Justus has not shown or explained why it was reasonable to file his motion more than five years after his habeas petition was dismissed."). Because a party must demonstrate both timeliness and "extraordinary circumstances" to prevail under Rule 60(b)(6), either finding, if upheld, would provide grounds for dismissing Justus's motion.

Accordingly, we first address whether Justus's Rule 60(b) motion is time-barred. We conclude that his motion was properly filed under Rule 60(b)(6) and, therefore, need only have been "made within a reasonable time." Fed. R. Civ. P. 60(c)(1). As a result, we reaffirm our prior conclusion that, "[g]iven the extensive evidence documenting Justus' severe mental disabilities," his Rule 60(b) motion was timely. Order 1, Sept. 24, 2020, ECF No. 11. Next, we conclude that an evidentiary hearing is necessary to determine whether Justus's mental disabilities present "extraordinary circumstances" warranting relief under Rule 60(b)(6) and equitable tolling.

### A.

Despite the five-year period between the court's dismissal of his petition and Justus's Rule 60(b) motion, we previously entered an order stating that "[g]iven the extensive evidence documenting Justus' severe mental disabilities, the Court deems the Rule 60(b) motion to be timely." Order 1, Sept. 24, 2020, ECF No. 11. *See generally Klapprott*, 335 U.S. at 607–14 (finding a four-year gap timely where the party was incarcerated, ill, and lacked the ability to hire counsel). While our order did not specify which subsection of Rule 60(b) we found applicable to Justus's motion, Justus invoked subsection (6), and the district

11

court considered only that subsection in its analysis. Thus, this Court's determination that Justus's motion was timely was likely based on a finding that Justus's mental illness made his five-year filing delay "reasonable" under Rule 60(b)(6). *See* Fed. R. Civ. P. 60(c). We find it necessary, however, to revisit our determination that Justus's motion was timely filed before we consider whether Justus is entitled Rule 60(b) relief.

Following the May 3, 2022, oral argument in this case, the Supreme Court decided *Kemp v. United States*, 142 S. Ct. 1856 (2022). *Kemp* held that "legal errors made by judges" are properly addressed by Rule 60(b)(1). In response to that decision, we instructed the parties to provide supplemental briefing addressing the following questions:

1) Whether, in light of *Kemp v. United States*, 142 S. Ct. 1856 (2022), a petitioner's motion to reopen a district court's dismissal of his federal habeas petition as untimely on the grounds that he is entitled to equitable tolling due to his mental illness is properly classified as a Rule 60(b)(1) motion or a Rule 60(b)(6) motion; and

2) If petitioner's motion is properly classified as a Rule 60(b)(1) motion, given the applicable one-year maximum limitations period, what impact does our prior determination that his Rule 60(b) motion is 'deem[ed]' timely, including in our order granting a certificate of appealability, have on this Court's consideration of whether petitioner's Rule 60(b)(1) motion is timely.

ECF No. 68 at 2. Upon consideration of the parties' arguments, we conclude that Justus's motion is properly classified as a Rule 60(b)(6) motion, and accordingly reaffirm that the motion is timely filed.

### 1.

The Supreme Court held in *Kemp* that Rule 60(b)(6) provides an option for justifiable relief that "is available only when Rules 60(b)(1) through (b)(5) are

12

inapplicable." 142 S. Ct. at 1861 (citing *Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 863 n.11 (1988)). The timeliness of Justus's Rule 60(b) motion depends upon whether his motion is properly characterized as a Rule 60(b)(1) motion or a Rule 60(b)(6) motion. As noted above, Rule 60(b) requires that the motion "be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Thus, if found to be a Rule 60(b)(1) motion, Justus's motion is barred by a one-year statute of limitations, and he may not, in the alternative, seek relief under Rule 60(b)(6). But if the motion is properly classified as a Rule 60(b)(6) motion, it is timely if filed within a "reasonable" amount of time. *See Kemp*, 142 S. Ct. at 1860.

Appellee Harold Clarke ("Clarke") urges us to find that Justus's motion is time-barred. He contends that Justus's motion argues that "the district court erred in 'barr[ing]' the 'petition at issue,'" Appellee's Supp. Br. at 3, and that *Kemp* "makes clear" that such a motion is properly classified as a Rule 60(b)(1) motion because it "sought relief from the judgment based on 'mistake' or 'excusable neglect.'" Appellee's Supp. Br. at 1. And because Justus "could have" brought his motion as a Rule 60(b)(1) motion, Rule 60(b)(6) is inapplicable and his motion is untimely. Appellee's Supp. Br. at 8.

For his part, Justus argues that his Rule 60(b) motion is properly classified as a Rule 60(b)(6) motion because it did not assert that the district court erred in concluding that he was not entitled to equitable tolling. He explains that evidence of his mental illness entitling him to equitable tolling was not before the district court until he filed the Rule 60(b) motion. Thus, he contends, the motion did not argue that the district court erred in

13

its prior order when it determined that he did not demonstrate any grounds to support equitable tolling. The motion instead argued that Justus's severe, ongoing mental illness had prevented him from effectively presenting an equitable tolling argument. Accordingly, Justus argues that his Rule 60(b) motion was properly construed as arguing that an "extraordinary circumstance"—Justus's severe mental illness—justified relief under Rule 60(b)(6). Following this view, this Court is not bound by the one-year limitations period applicable to Rule 60(b)(1) motions in determining whether his Rule 60(b) motion was timely filed. Appellant's Suppl. Br. at 1.

To resolve this dispute, we address whether Justus's motion argues either "mistake" or "excusable neglect" under Rule 60(b)(1).

## 2.

The terms "mistake, inadvertence . . . or excusable neglect" found in Rule 60(b)(1) are often used interchangeably or in conjunction with each other. A "mistake" under Rule 60(b)(1) occurs when "the judge has made a substantive mistake of law or fact in the final judgment or order," as well as where "a party has made an excusable litigation mistake." *Cashner v. Freedom Stores, Inc.*, 98 F.3d 572, 576 (10th Cir. 1996). *Kemp* recently confirmed that the term "mistake" in Rule 60(b)(1) includes all errors of law made by a judge, including "misapplying controlling law to record facts." 142 S. Ct. at 1862 & n.2. In challenging such an error, a petitioner "should . . . invoke[] Rule 60(b)(1), not (b)(6)." *Blitch v. United States*, 39 F.4th 827, 834 (7th Cir. 2022) (quoting *Kemp*, 142 S. Ct. at 1862).

The Fourth Circuit has suggested that "neglect" under Rule 60(b)(1) includes "inadvertence, mistake, or carelessness, as well as . . . intervening circumstances beyond

14

the party's control." *e.spire Commcn's, Inc. v. CNS Commcn's*, 39 F. App'x. 905, 912 n.7 (4th Cir. 2002) (quoting *Thompson v. E.I. DuPont de Nemours & Co.*, 76 F.3d 530, 533 (4th Cir. 1996)). And this Court has defined "excusable" as "'an equitable [inquiry], taking account of all relevant circumstances surrounding the party's omission,' including 'the danger of prejudice to the [nonmovant], the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.'" *Thompson*, 76 F.3d at 533 (quoting *Pioneer Inv. Serv. Co. v. Brunswick Assoc. Ltd. P'ship*, 507 U.S. 380, 395 (1993)). "The most important of the[se] factors . . . for determining whether 'neglect' is 'reasonable'" is the reason for the delay. *Id.*, 76 F.3d at 534.

Clarke argues that Justus's motion alleges either judicial error or his own mistake or excusable neglect. We find that it does not.

a.

First, Clarke interprets Justus's motion as alleging that the district court made a judicial mistake by dismissing his habeas petition as untimely. According to Clarke, Justus contends in his motion that "the district court erred in 'barr[ing]' the 'petition at issue' on the grounds that 'petitioner made no arguement [sic] to support equitable tolling of the statute of limitations,'" Appellee's Supp. Br. at 3 (citing J.A. 159), and "[b]ecause he *could* have brought his motion as a Rule 60(b)(1) motion on that ground," his motion is properly classified as such. Appellee's Supp. Br. at 9–10 (emphasis in original).

But Clarke's argument that Justus's motion alleges a judicial mistake misconstrues Justus's allegations. In no way does Justus state that the district court "erred." Rather he

15

states that "a prisoner's failure to file within the specified time must be excused if such failure was attributable to a mental disability that impaired the prisoner's ability to recognize the basis for, or to take advantage of, possible collateral remedies." J.A. 159. He further contends that "[t]he petition . . . was barred noting that petitioner made no arguement [sic] to support equitable tolling of the statute of limitations," which "would require an awareness of that time period that petitioner can't relay, a time period when anyone that had involvement with him concurred that he was symptomatic according to his disability." *Id.* A careful reading of Justus's motion demonstrates that it is not a statement intended to establish any error on the part of the court.

Beyond the language of the motion itself, Justus makes another compelling argument that he did not move for Rule 60(b) relief on the ground that the district court made a mistake of law in denying him equitable tolling or in dismissing his petition: the court's ruling was not error based on the record before it, which alleged no facts related to Justus's mental illness.

When the district court issued its order dismissing Justus's petition, Justus had not argued that his mental illness entitled him to equitable tolling, nor was there any evidence in the record to support that argument. That evidence was submitted to the court *for the first time* when Justus filed his Rule 60(b) motion. And it was in this motion that Justus argued, again for the first time, that he was entitled to equitable tolling due to his mental illness. Thus, Justus's Rule 60(b) motion did not, and could not, present any argument that the district made a mistake or error of law when it first concluded that he was not entitled to equitable tolling. In other words, the court did not err in "overlook[ing] a material

16

argument" which would fall within the scope of Rule 60(b)(1), *see Blitch*, 39 F.4th at 834, nor was there any "misappl[ication]" by the district court of "controlling law to record facts," *see Kemp*, 142 S. Ct. 1862 n.2.

Arguing for a contrary conclusion, Clarke relies on two unpublished opinions from other circuits. In *Smith v. Johnson*, No. 00-10019, 2001 WL 43520 at *1 (5th Cir. Jan. 3, 2001), the issue of mental competence came before the district court for the first time in the petitioner's habeas petition, where he asked the court to hold a hearing on his "ability to totally understand the written matter that presents itself here or the conceptual matter involved with this cause." *Id.* The district court dismissed his petition as time-barred without holding a hearing. *Id.* The Fifth Circuit then construed petitioner's subsequent Rule 60(b) motion—where he argued that a limitations period "should have been equitably tolled because he is mentally incompetent"—as a claim for relief under Rule 60(b)(1) based on a legal mistake. That court denied relief because the petitioner "failed to allege sufficient facts to support his claim of incompetence" and "[c]onsequently . . . never demonstrate[d] to the district court that his claim of incompetence was anything more than a bald assertion." *Id.* at *2.

In the other case, the Sixth Circuit denied the petitioner a certificate of appealability after the district court denied his Rule 60(b)(1) motion. *Reynolds v. Nagy*, No. 18-1942, 2018 WL 11303656, at *1 (6th Cir. Nov. 8, 2018). The court rejected the petitioner's argument that the district court committed a legal mistake by finding he was not entitled to equitable tolling on the grounds that the petitioner, who had a learning disability, failed to

17

present evidence to demonstrate he was mentally incompetent or that his incompetence caused his untimely filing. *Id.*

Justus's case is not analogous to either of these cases. Unlike *Smith* and *Reynolds* where the petitioners alleged errors by the district court, Justus did not raise the issue of his mental illness before the district court at all. And when he did raise it—in his Rule 60(b) motion—he provided the district court with evidence sufficient to document his mental illness. This evidence was presented in support of his equitable tolling argument, not to show that the district court had previously made a "mistake" in determining *sua sponte* that he had not stated grounds for equitable tolling.

In sum, based on the language of Justus' motion and his failure to allege any "mistake" by the district court, the motion should not be deemed a Rule 60(b)(1) motion on those grounds.

### b.

Second, Clarke asserts that Justus's motion is a Rule 60(b)(1) motion because "it is premised on arguments that Justus's own 'mistake, inadvertence, . . . or excusable neglect[]' justified relief from judgment." Appellee Supp. Br. at 10 (citation omitted). Here, too, we are unpersuaded. When the district court ordered Justus in 2013 to submit arguments on or evidence concerning why "the petition should be deemed timely," J.A. 116, Justus's response did not address the timeliness issue at all, and the court dismissed his petition. Justus contends in his motion that he was "diligent in making effort to assert his rights," but his mental illness "would not allow him to generate [a] competent petition himself." J.A. 159. But Clarke argues that whether Justus misunderstood the court's order or failed to

18

comply with it due to his mental issues, his motion to reopen judgment is an "example of alleged litigant mistake or excusable neglect due to 'carelessness or . . . intervening circumstances beyond the party's control'" that falls under Rule 60(b)(1) and its one-year limitations period. Appellee's Supp. Br. at 11 (citing *Thompson*, 76 F.3d at 533). We disagree, as Clarke has failed to recognize the meaningful distinction between excusable neglect and "extraordinary circumstances" in this case.

As we have noted, our Circuit has held the reason for a delay is "[t]he most important" factor "for determining whether 'neglect' is 'reasonable'" under Rule 60(b)(1). *See Thompson*, 76 F.3d at 534. But to justify relief under Rule 60(b)(6), "a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay." *Pioneer*, 507 U.S. at 393 (citing *Liljeberg*, 486 U.S. at 863 & n.11). This requires the petitioner to demonstrate "an extraordinary situation which cannot fairly or logically be classified as mere 'neglect' on his part" and that "reveal[s] far more than a failure to defend . . . due to inadvertence, indifference, or careless disregard of consequences." *Id.* (quoting *Klapprott*, 335 U.S. at 613). Conversely, "[i]f a party is partly to blame for the delay, relief must be sought within one year under subsection 1 and the party's neglect must be excusable." *Id.* Inability to comply with a deadline takes a situation "outside the scope of 'excusable neglect' 'because "neglect" in the context of its subject matter carries the idea of negligence and not merely of non-action.'" *Id.* (quoting *Klapprott*, 335 U.S. at 630 (Frankfurter, J., dissenting)). "Thus, at least for purposes of Rule 60(b), 'excusable neglect' is understood to encompass situations in which the failure to comply with a filing deadline is attributable to negligence. Because of the language and structure of Rule 60(b),

19

a party's failure to file on time for reasons beyond his or her control is *not* considered to constitute 'neglect.'" *Pioneer*, 507 U.S. at 394 (emphasis added).

Unfortunately, Justus's supplemental brief does not address the applicability of excusable neglect under Rule 60(b)(1) or how it is distinguishable from "extraordinary circumstances" that justify relief under Rule 60(b)(6). And Clarke mentions the potential applicability of Rule 60(b)(6) only briefly, stating that "[e]ven if a movant's mental condition could theoretically fall within the ambit of Rule 60(b)(6) under certain 'extraordinary circumstances' not covered by any other provision of Rule 60(b), as the district court noted, Justus here 'presented nothing to explain his delay of more than five years in filing his motion for reconsideration,'" and "therefore failed to demonstrate that any 'extraordinary circumstance warrants relief here.'"[8] Appellee's Supp. Br. at 12 n.3 (citing J.A. 239, 241 n.3).

But a close review of Justus's motion demonstrates that his claim for relief under Rule 60(b)(6) "did not rest on mere allegations of 'excusable neglect.'" 335 U.S. at 613. It asserted an "extraordinary circumstance"—his severe mental illness—as justification for relief under Rule 60(b)(6).

---

[8] Curiously, the district court reached this conclusion even after acknowledging that Justus had been diagnosed with "a number of mental health disorders, some of them quite serious," that psychologists for both the prosecution and the defense testified that "at least after the offense, he was suffering from a serious mental illness," and that Justus "was twice institutionalized to restore competency before being required to stand trial." J.A. 240. The court also noted that although the trial court ultimately determined he was not insane at the time of the offense, there was "substantial evidence . . . that the defendant suffer[ed] from some very serious mental health problems." J.A. 240–41.

20

First, beyond the caption of the motion itself and its conclusion, both of which specifically invoke Rule 60(b)(6), the motion, drafted by a prison advocate, explains that making an argument in support of equitable tolling "would require an awareness of that time period that petitioner can't relay, a time period when anyone that had involvement with him concurred that he was symptomatic according to his disability," and that his "severe mental disability has directly attributed to a complex tangle of legal issues that has to be undone one knot at a time." J.A. 159. The motion concludes with a request to the court to "undo the first knot by . . . [r]eviving his lost right of appeal pursuant to Federal Rule 60(b)(6)." *Id.* Given this Court's duty to construe *pro se* filings liberally, *see Arakas v. Comm'r*, 983 F.3d 83, 104 n.11 (4th Cir. 2020), these facts and allegations support a finding that Justus intended to seek relief under Rule 60(b)(6), not Rule 60(b)(1).

Second, if Clarke's reliance on the Fifth Circuit's opinion in *Smith v. Johnson* is helpful at all, it is because it establishes that "mental incompetence, if sufficiently severe, may qualify as an extraordinary circumstance that justifies equitable tolling and relief from a judgment." 2001 WL 43520, at *3. Here, Justus's allegations of his severe mental illness, if true, are sufficient "to demonstrate that his condition was the type of extraordinary circumstance that merited equitable tolling, and therefore Rule 60(b)(6) relief." *Id.* at *2.

As discussed *infra*, Justus was diagnosed with a number of "quite serious" mental health disorders. J.A. 240. Psychologists who evaluated him on behalf of both the prosecution and the defense agreed that "he was suffering from a serious mental illness" *after the offense*. *Id.* In fact, he was so mentally ill that "he was twice institutionalized" to restore competency to stand trial. *Id.* The court also noted that although he was not insane,

21

there was "substantial evidence . . . that [Justus] suffer[ed] from some very serious mental health problems." J.A. 240–41.

Finally, and perhaps most importantly, Justus's prison advocate noted that "anyone that had involvement with Justus concurred that he was symptomatic according to his disability," "his disability would not allow him to generate [a] competent petition himself," "he could not communicate," and "[h]is severe mental disability has directly attributed to [the] complex tangle of legal issues" in which Justus finds himself. J.A. 159. In short, "[h]is severe mental disability" "impaired [his] ability to recognize the basis for, or to take advantage of, possible collateral remedies." *Id.* His advocate also noted that while he was attempting to help Justus with his case, Justus "immediately started to show signs of agitat[ion] and stress until reaching a point that [he] could not even speak to him about his legal issues." J.A. 160. But the advocate pressed on with Justus's case "to keep [his] promise to help" and because he "d[id] not want to fail [Justus] after he has been failed in this matter at every level of review." *Id.*

Unable to accept that reality, Clarke cites two more unpublished, out-of-circuit, and factually distinguishable authorities in support of his argument that Justus's delay in filing constituted excusable neglect. *See Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457–58 & n.4 (6th Cir. 2011) (affirming denial of a Rule 60(b)(1) motion arguing that due to petitioner's "medical condition" (paranoid schizophrenia) and prescription drug side effects, petitioner's "mental state was such that he did understand the rules or court orders" because petitioner "[had] not submit[ted] any proof that any medical ailments or prescription medications affected his mental capacity."); *Washington*

22

*v. State Street Bank & Trust Co.*, 14 F. App'x 12, 15 (1st Cir. 2001) (affirming without explanation or analysis denial of a Rule 60(b)(1) motion that was based on several excuses for delay, including the petitioner's "mental difficulties."). Neither case, however, analyzes whether a delay in filing due to mental illness constitutes "neglect" or an "extraordinary circumstance" that justifies relief. *See Pioneer*, 507 U.S. at 393. Further, in neither case did the moving party seek relief under Rule 60(b)(6) as Justus has done, and unlike here, the courts in those cases found that they lacked evidence to support claims of mental incapacity.

For all these reasons, we find that Justus's situation falls squarely in the category of exceptional circumstances rather than excusable neglect.

***

Accordingly, we conclude that Justus's Rule 60(b) motion was properly classified as a motion under Rule 60(b)(6), and that he alleged "extraordinary circumstances" that, if confirmed, would justify relief. And given that a Rule 60(b)(6) motion need only "be made within a reasonable time," *see* Rule 60(c)(1), we reaffirm our September 24, 2020 holding that Justus's Rule 60(b) motion was timely—filed within a reasonable time "[g]iven the extensive evidence documenting Justus's severe mental disabilities," Order 1, Sept. 24, 2020, ECF No. 11.

B.

1.

Having established the timeliness of the Rule 60(b)(6) motion, we turn to the heart of the matter. By issuing a COA in this case, we found that Justus had made "a substantial

23

showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2) ("A certificate of appealability may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right."). Where, as here, "the district court denies relief on procedural grounds," a substantial showing of the denial of a constitutional right is met if the petitioner can "demonstrate both that the dispositive procedural ruling is debatable, and that the petition states a debatable claim of the denial of a constitutional right." *Nedd v. Clarke*, 771 F. App'x 281, 282 (4th Cir. 2019) (per curiam) (citing *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000)); *see also Reid*, 369 F.3d at 371 (explaining that in considering whether to issue a COA to permit review of a Rule 60(b) motion, a court should "not look exclusively at the [60(b)] motion" but also "assess whether [petitioner] has made a substantial showing of the denial of a constitutional right").

The central issue in this appeal is whether Justus has shown "extraordinary circumstances" entitling him to Rule 60(b)(6) relief and equitable tolling of his federal habeas petition. The overlap between the types of "extraordinary circumstances" that entitle a petitioner to 60(b)(6) relief and those "extraordinary circumstances" that entitle a petitioner to equitable tolling has not been outlined in our precedent. And few other courts have considered the issue. In an unpublished case, the Fifth Circuit seems to have found the two standards coterminous, or at least substantially overlapping, in the context of profound mental illness. *See Smith*, 2001 WL 43520, at *3 ("[M]ental incompetence, if sufficiently severe, may qualify as an extraordinary circumstance . . . . that merit[s] equitable tolling, *and therefore* Rule 60(b)(6) relief." (emphasis added)).

24

Perhaps recognizing this precedent, the district court defined the issue presented by Justus's Rule 60(b)(6) motion as "whether [Justus] was entitled to equitable tolling as a result of his mental condition," J.A. 240, and we granted a COA concerning "whether Justus should be entitled to equitable tolling regarding his habeas petition," Order 1, Sept. 24, 2020, ECF No. 11. Consistent with that framing, we collapse the Rule 60(b)(6) and equitable tolling "extraordinary circumstances" inquiries for the purpose of this analysis. As a general matter, we recognize that "an extraordinary circumstance must independently warrant each particular relief sought," and that each form of relief may serve a different purpose and present unique factual questions. *Zack v. Sec'y, Fla. Dep't of Corr.*, 721 F. App'x 918, 923 (11th Cir. 2018) (unpublished). But given the posture of this case and the centrality of the facts surrounding Justus's mental illness to both inquiries, we conclude that if Justus's mental illness satisfies the equitable tolling "extraordinary circumstances" standard, it should also demonstrate "extraordinary circumstances" under Rule 60(b)(6).

2.

The district court found that Justus was not entitled to equitable tolling for his untimely federal habeas petition because he had not "show[n] that his mental problems were so profound that they prevented him from filing basically at any time from the date he discovered his attorney's error (in May 2010) through some point in 2012." J.A. 240–41. Although the court agreed that "Justus's medical records indicate that he has been diagnosed with a number of mental health disorders, some of them quite serious," it did not consider his mental illness an "extraordinary circumstance" because "nothing [Justus]

25

has provided suggests that he was institutionalized or judged to be incompetent at any point after he was convicted, which is the relevant time period." J.A. 240.

We have previously explained that "[a]s a general matter, the federal courts will apply equitable tolling because of a petitioner's mental condition only in cases of *profound mental incapacity*." *Sosa*, 364 F.3d at 513 (emphasis added). But we have not elaborated on what categories of mental impairment constitute such profound incapacity. And in this vacuum, some courts have interpreted our use of the term "incapacity" and the *Sosa* Court's citation to a Ninth Circuit case, *Grant v. McDonnell Douglas Corp.*, 163 F.3d 1136 (9th Cir. 1998), to limit the availability of equitable tolling to cases of "institutionalization or adjudged mental incompetence." *See, e.g.*, *Sosa*, 364 F.3d at 513 (quoting *Grant*, 163 F.3d at 1138).[9]

That limitation, however, is ill-suited for this context. The capacity at issue here is what is necessary to timely file a habeas petition. And that differs from the capacity required to stand trial or to waive the right to counsel. *See Bills v. Clark*, 628 F.3d 1092, 1099 (9th Cir. 2010) ("[T]he 'competency' standard does not exist in a vacuum—it varies in relation to the task the defendant is expected to perform. A decision to stand trial or plead guilty is different from undertaking a self-defense at trial."); *Hunter v. Ferrell*, 587 F.3d 1304, 1309 (11th Cir. 2009) ("Whether a criminal defendant is competent to stand trial with an attorney is a materially different question from whether a habeas petitioner's undisputed, substantial [intellectual disability] prevented him from filing *pro se* his § 2254

---

[9] Notably, *Grant* did not hold that equitable tolling must be limited to such situations; it merely recognized that other circuits had permitted equitable tolling for mental illness in limited circumstances and provided examples of such. *See* 163 F.3d at 1138.

petition within the AEDPA's one-year limitations period."). Indeed, the Supreme Court has articulated different competency standards for different proceedings. *See Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam) (competence to stand trial); *Indiana v. Edwards*, 554 U.S. 164, 178 (2008) (competence to represent oneself at trial).

In the habeas context, we hold that a petitioner's mental impairment is sufficiently profound if it renders him unable to comply with the filing deadline. As the Ninth Circuit has explained, the "extraordinary circumstances" test for equitable tolling is met either where the petitioner cannot "rationally or factually . . . understand the need to timely file" *or* where his "mental state render[s] him unable . . . to prepare a habeas petition and effectuate its filing." *Bills*, 628 F.3d at 1099–1100; *see also Perry v. Brown*, 950 F.3d 410, 412–13 (7th Cir. 2020) (explaining that a defendant with aphasia, which impaired his ability to speak, write, and understand words, may have been "unable to use language well enough to protect his interests," including by not being able to "ask someone else to assist him").

Thus, the district court's emphasis on Justus's failure to provide evidence "suggest[ing] that he was institutionalized or judged to be incompetent at any point [during] the relevant time period" is misplaced because, while a petitioner's institutionalization or adjudged incompetence is certainly relevant to an equitable tolling analysis, it is not required. J.A. 241. Rather, this case requires a more particularized investigation into Justus's mental illness at the relevant times to determine whether it rendered him unable to timely file his habeas petition.

Clarke argues that Justus has provided insufficient evidence to meet this standard because he has not provided treatment records or other evidence of his level of impairment

27

during the relevant one-year filing period. But Justus has, and had at that point, been diagnosed with either Schizoaffective Disorder or Bipolar Disorder (Most Recent Episode Mixed, with Psychosis), which is a *lifelong* illness. Thus, his earlier and later medical records provide evidence of his mental functioning during the relevant period. *See Ata v. Scutt*, 662 F.3d 736, 743–44 (6th Cir. 2011) (explaining that "the record corroborates [petitioner's] allegations of mental incompetence preventing timely filing" even though "many of the instances in the record of his past medical treatment occurred before incarceration" because his "diagnosis of paranoid schizophrenia presents a lifelong condition"); *Hunter*, 587 F.3d at 1309–10 (finding that petitioner had provided sufficient evidence "to raise a factual issue as to whether a causal connection exists between his mental impairment and his ability to file a timely § 2254 petition" because a medical expert testified that his impairment "is significant and irreversible" and so a 1997 expert report "remains probative of Hunter's mental impairment as to the § 2254 petition during the limitations period and beyond to 2008"). For that reason, we have affirmed here our initial conclusion that Justus's Rule 60(b) motion was timely "[g]iven the *extensive evidence* documenting Justus's severe mental disabilities," Order 1, Sept. 24, 2020, ECF No. 11 (emphasis added), based on medical records documenting Justus's symptoms at times preceding the five-year period between the dismissal of his federal habeas petition and the filing of his Rule 60(b) motion.

As we previously explained, Justus has provided extensive evidence that he is severely mentally ill. Following his arrest, Justus was twice found incompetent to stand trial. And, although the Circuit Court rejected Justus's insanity defense, it recognized at sentencing that

28

"there is substantial evidence in this case that the defendant suffers from some very serious mental health problems." J.A. 180. In particular, there is significant evidence—including his treating psychologist's trial testimony and his post-conviction medical records—establishing that when unmedicated, Justus's functioning deteriorates and he experiences depression and psychotic symptoms, such as paranoia and perceptual disturbances.

Indeed, Justus's form of mental illness is characterized by periods of noncompliance with treatment. *See* Paul S. Appelbaum, Reference Guide on Mental Health Evidence, in Fed. Judicial Ctr., Reference Manual on Scientific Evidence 858 (3d ed. 2011) (explaining that although antipsychotics are very effective, patients often stop taking them "due in part to the nature of some mental disorders, especially schizophrenia," which leads affected persons to deny that medication is needed). At trial, a psychologist who treated Justus between his two hospitalizations explained that Justus would go through periods of noncompliance with medication after which he quickly re-experienced symptoms. J.A. 214 ("[H]e'd go—take the medication, symptoms would dissipate, then he'd go off and they'd increase, and he'd go back on and they'd decrease again."). Indeed, Justus's treatment records between May 2007 and September 2008 describe multiple periods during which he rejected medications, and, as noted above, an April 2016 doctor's note explains that Justus "has been off meds much more than on meds." J.A. 225. In sum, a feature of Justus's illness is that he will frequently reject treatment, and he has provided evidence strongly suggesting that he lacks the ability to timely file a habeas petition during periods of nontreatment. At a minimum, this evidence warrants further exploration into Justus's mental state during the relevant time period.

It is true, as the dissent points out, that Justus filed state habeas petitions and engaged in other litigation-related activity between May 18, 2010 (when the limitations period for Justus's federal habeas petition began to run) and September 24, 2013 (when Justus filed his federal habeas claim). But that fact does not preclude a finding that Justus's mental illness during that timeframe amounts to an "extraordinary circumstance." That is, while those petitions may undermine Justus's argument that his "mental state rendered him unable personally to prepare a habeas petition and effectuate its filing," they do not speak to his ability "rationally or factually to personally understand the need to timely file." *Bills*, 628 F.3d at 1100. To the contrary, that at least one of his state petitions was dismissed as untimely corroborates Justus's claim that his mental illness prevented him from *timely* pursing his claims. And as the Ninth Circuit recognized in *Bills*, *either* the inability to understand the need to timely file *or* the inability to file a habeas petition can amount to an "extraordinary circumstance" warranting equitable tolling. *Id.* Therefore, even if Justus's state habeas petitions and related activity cut against his argument, they are not so dispositive that they should short-circuit an evidentiary hearing at which Justus can finally present full evidence of his mental illness and its effect on his ability to file. With that evidence in hand, the district court will be well-suited to determine how much weight, if any, to assign Justus's state habeas petitions in its "extraordinary circumstances" analysis.

Thus, we find that Justus's allegation that his mental illness was so severe during the filing period that it prevented him from timely filing his habeas petition, if true, constitutes an "extraordinary circumstance" supporting both Rule 60(b)(6) and equitable tolling relief, and that there is sufficient supporting evidence in the record to justify further inquiry.

We acknowledge that the reason for the high "extraordinary circumstances" standard in the Rule 60(b) context is to protect the finality of judgments. *See Gonzalez*, 545 U.S. at 535. Yet Rule 60(b)(6) also "provides the court with a grand reservoir of equitable power to do justice in a particular case." *Reid*, 369 F.3d at 374 (quoting *Eberhardt*, 167 F.3d at 872). Given Justus's evidence and allegations of his severe and continuing mental illness, this case strikes us as one that likely "cries out for the exercise of that equitable power to do justice." *Gray*, 1 F.3d at 266. Therefore, we conclude that the district court abused its discretion in failing to hold an evidentiary hearing and remand for the district court to determine whether Justus's mental illness constitutes an "extraordinary circumstance" that warrants Rule 60(b)(6) and equitable tolling relief.[10]

## V.

By all accounts, Justus suffers from a serious mental illness. He has sufficiently alleged, and provided evidence supporting, the severity and continuing nature of his mental illness to at least justify an inquiry into whether and for how long his illness may have prevented him from filing his habeas petition. We therefore reverse the district court's order

---

[10] If, on remand, the district court finds "extraordinary circumstances," it should also address any remaining factors in the Rule 60(b) and equitable tolling analyses. In considering the diligence required for equitable tolling, the court should consider Justus's pursuit of his state habeas claims as evidence that he exercised reasonable diligence during the filing period. Although at least some of those filings were late, that does not undercut a finding of diligence here because Justus needed only to exercise reasonable diligence *given his mental illness*. *See Bills*, 628 F.3d at 1100–01 (explaining that in the context of mental illness, a court must "consider whether the circumstances demonstrate the petitioner was *otherwise* diligent in attempting to comply with the filing requirements" (emphasis added)).

denying Justus's Rule 60(b) motion and remand the case to the district court with instructions to conduct an evidentiary hearing on whether Justus's mental condition during the relevant period constitutes an "extraordinary circumstance" that justifies relief under Rule 60(b)(6) and entitles him to equitable tolling of the statute of limitations governing his habeas petition.

*REVERSED AND REMANDED*

NIEMEYER, Circuit Judge, dissenting:

Berman Justus, who was convicted of capital murder in state court in 2006, was years late when, in September 2013, he filed this federal habeas petition under 28 U.S.C. § 2254, which carries a one-year limitation period, *see* 28 U.S.C. § 2244(d)(1).  The district court accordingly dismissed his petition as untimely.  When, five years later, Justus filed a motion for relief from that final judgment under Federal Rule of Civil Procedure 60(b)(6), arguing that the filing deadline for his habeas petition should have been equitably tolled because of his mental illness, the court found that Justus had not demonstrated that his mental illness excused the untimeliness of his habeas petition.  More particularly, the court found that Justus had not "show[n] that his mental problems were so profound that they prevented him from filing basically at any time from the date he discovered his attorney's error (in May 2010) through some point in 2012."  Accordingly, the court denied Justus's motion for relief from the judgment.  We then issued a certificate of appealability on the issue of "whether Justus should be entitled to equitable tolling regarding his habeas petition," and we stated that his Rule 60(b)(6) motion would be considered as timely.

Although we previously directed the inquiry only to the timeliness of Justus's habeas petition under § 2244(d)(1), the majority now appropriately recognizes that while we entered an order holding that Justus's Rule 60(b)(6) motion was timely — that is, "made within a reasonable time" within the meaning of Rule 60(c) — that order did *not* eliminate the need for Justus also to establish that "extraordinary circumstances" exist that warrant the reopening of the final judgment under Rule 60(b)(6).  *See Buck v. Davis*, 580 U.S. 100, 112 (2017).  Yet, while recognizing the need for Justus to establish extraordinary

33

circumstances to obtain Rule 60(b)(6) relief, the majority completely overlooks the Supreme Court's express admonition that, in the context of federal habeas proceedings, lower courts should be especially demanding before finding that extraordinary circumstances justifying a reopening are present. Indeed, the Court has specifically stated, "*Such circumstances will rarely occur in the habeas context.*" *Gonzalez v. Crosby*, 545 U.S. 524, 535 (2005) (emphasis added). And the majority also rides roughshod over the district court's findings, heedless of the Court's recognition that "Rule 60(b) proceedings are subject to *only limited and deferential appellate review.*" *Id.* (emphasis added).

Moreover, strangely and without any statutory authority, the majority concludes that it is appropriate to "collapse" the "extraordinary circumstances" inquiry that must be conducted before a Rule 60(b)(6) motion can be granted with the distinctly different analysis required for determining whether Justus's habeas petition was timely filed under § 2244(d)(1). *Ante* at 25. Certainly, the Rule 60(b)(6) and equitable tolling standards do each have in common an elemental requirement of showing "extraordinary circumstances." *See Buck*, 580 U.S. at 112; *Holland v. Florida*, 560 U.S. 631, 649 (2010) ("A petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing" (cleaned up)). But while there is some *overlap* between the two inquiries, it is legal error to simply *conflate* them, as the majority expressly does. *See ante* at 25. Such "collaps[ing]" fails utterly to recognize that while the "extraordinary circumstances" element required for showing equitable tolling focuses on the reason why a party failed to satisfy a particular filing deadline, the Court has required a movant

34

seeking Rule 60(b)(6) relief to establish "extraordinary circumstances" as a means of preserving *the finality of judgments*. *See Gonzalez*, 545 U.S. at 535. Despite these distinct standards and purposes, the majority concludes that "if Justus's mental illness satisfies the equitable tolling 'extraordinary circumstances' standard," it follows that he will have necessarily also established "'extraordinary circumstances' under Rule 60(b)(6)." *Ante* at 25. I cannot agree.

Finally, even looking beyond the flaws in the majority's Rule 60(b)(6) analysis, its approach to the underlying equitable tolling issue is equally marred. The majority holds that, based on the record presented to it, "the district court abused its discretion in failing to hold an evidentiary hearing" on whether Justus's habeas petition was timely filed. *Ante* at 31. Yet, while formally remanding for that purpose, the majority nonetheless forecasts its expectation for that hearing's outcome. It finds, for instance, that Justus's "five-year . . . delay" in filing his Rule 60(b)(6) motion was "reasonable" because of "the extensive evidence documenting [his] severe mental disabilities." *Id.* at 11–12; *see also id.* at 23, 28. And it observes that Justus "has provided evidence strongly suggesting that he lacks the ability to timely file a habeas petition during periods of nontreatment." *Id.* at 29. That clearly tramples the notion of a "limited and deferential appellate review." *Gonzalez*, 545 U.S. at 535.

In addition to these analytical flaws, the majority also relies on factual conclusions that are irredeemable. For instance, in applying the facts, the majority forswears the need for any medical records documenting Justus's mental illness *during the relevant period*. *See ante* at 27–28. And perhaps most problematic, it fails to account in any meaningful

35

way for evidence in the record demonstrating that during the relevant period, Justus was able to, and did, file relevant and complicated pleadings in court and conduct related correspondence. The record simply does not show — and, indeed, is inconsistent with finding — that Justus's substantial delay in filing his federal habeas petition can be justified on the ground that he was mentally incapable of timely filing that petition.

I would therefore affirm the district court's conclusion that Justus has not made the extraordinary showing required for equitably tolling the limitation period.

*          *          *

In October 2006, Justus was convicted in a Virginia state court of capital murder and related offenses, and on January 23, 2007, he was sentenced to life imprisonment plus 18 years. His conviction and sentence were affirmed by the Virginia Court of Appeals on November 30, 2007, and he did not appeal further to the Virginia Supreme Court.

Nearly three years later, on May 18, 2010, Justus sent a letter to the Virginia State Bar complaining about his attorney's performance in connection with his appeal. And thereafter, acting pro se, he filed two state habeas petitions, clearly presenting the claim as early as January 2011 that his counsel had been ineffective in "fail[ing] to perfect [his] appeal." After the second of those petitions was denied, he appealed to the Virginia Supreme Court, which also denied review. In addition to filing those petitions, Justus wrote additional letters complaining that his counsel had been ineffective "for failing to effect [his] appeal to the Supreme Court of Virginia."

On September 24, 2013, over three years after he first wrote the Virginia State Bar, Justus, again acting pro se, filed this federal habeas petition in the district court, making

36

the same ineffective assistance of counsel claim that his "counsel failed to perfect [his] second-tier direct appeal to the Virginia Supreme Court." The district court noted that Justus's federal petition appeared to be untimely but allowed him to present an argument as to why it was not, even though it was filed more than a year after the one-year statute of limitations had run. *See* 28 U.S.C. § 2244(d)(1)(D). Following Justus's response, the court concluded that "[d]espite being given the opportunity to amend his petition, Justus [had] ma[de] no argument to support equitable tolling of the statute of limitations." Accordingly, the court found that "Justus ha[d] not demonstrated any grounds for equitable tolling," and on June 6, 2014, it dismissed his petition as untimely.

More than five years later, on August 13, 2019, Justus filed a motion in the district court under Federal Rule of Civil Procedure 60(b)(6) to reopen the court's judgment dismissing his federal habeas petition. He argued then *for the first time* that his severe mental disorders had prevented him from filing his habeas petition on time and therefore that the one-year limitation period applicable to federal habeas petitions should have been equitably tolled. The district court, relying on our established standard that "'equitable tolling [because] of a petitioner's mental condition' is only appropriate 'in cases of profound mental incapacity'" (quoting *United States v. Sosa*, 364 F.3d 507, 513 (4th Cir. 2004)), denied Justus's motion for reconsideration. It found that Justus had "not made the kind of 'extraordinary' showing [necessary] to entitle him to equitable tolling."

Remarkably, the majority now totally overlooks the gap in evidence by pointing to Justus's medical records from before 2009, projecting them forward without any basis for concluding that they were applicable to the period from May 18, 2010 (when Justus had

37

undisputedly learned of his ineffective assistance claim) to September 24, 2013 (when he filed his federal habeas petition). The majority does so simply by emphasizing the severity of Justus's pre-2009 condition and hypothesizing that it debilitated Justus during the relevant period — despite the fact that, during that same period, Justus had pursued his ineffective assistance of counsel claim with multiple filings and letters, thus demonstrating that he was indeed also capable of filing a federal habeas petition but simply failed to do so. The relevant details of the record are not disputed.

First, the record contains no medical evidence from the relevant time period that shows that Justus had a medical condition that denied him the ability to file his habeas petition on time. And the medical evidence that Justus did provide from outside the relevant period shows that the severity of his mental illness was not constant. To be sure, the record indicates that Justus had a mental disorder that was both chronic and severe. But significantly, it also indicates that the severity of the symptoms he experienced *fluctuated over time*. For instance, in November 2007, medical staff recorded about Justus, "no mental health issues reported or observed." But in June 2008, when he had "been off all med[ications] over the past several months," medical records indicate that his "condition [had] deteriorated" fairly significantly, and he presented as "distressed" and "disoriented." Yet by comparison, in April 2016, when he also had not been on any medication, he reported difficulty sleeping and stress associated with being moved to a new prison but otherwise indicated that he was "not having too many issues with schizoaffective disorder" as long as he could keep his stress level in check. The doctor who interviewed him described his judgment, impulse control, and insight as "fair" and his affect as only "mildly

38

dysphoric." Indeed, Justus's own take on his condition, as described in an affidavit filed with his motion for reconsideration, is that he has "in[s] and outs," meaning, as he explained, "that there are time periods where I'm dealing with things in a present sense and times when I'm not." And his mother wrote during the same period that "[h]e can be OK sometimes. But if he stresses to[o] much I'm worried."

Of course, these points are not intended to show that Justus did not or does not have a serious mental disorder, but rather that the severity of his disorder varied, such that Justus had periods in which he could function relatively normally if he was not under stress. Most importantly, however, the record contains no medical evidence about Justus's condition between May 18, 2010, and September 24, 2013, which is the relevant period for determining whether the limitation period should be tolled because of Justus's mental condition.

Moreover, evidence from the relevant period shows affirmatively that Justus was indeed able to file coherent court pleadings on his own behalf. During that same period, he also was able to write letters to advance his claim that his lawyer provided him ineffective assistance. Specifically, from May 18, 2010, to September 24, 2013 — the relevant period — Justus took the following actions:

1. On May 18, 2010, he sent a letter to the Virginia State Bar complaining about the conduct of his attorney, J. Lloyd Snook, III.

2. In the summer and early fall of 2010, after receiving Snook's explanation as to why he had failed to perfect an appeal to the Virginia Supreme Court, Justus sent Snook two letters asking for assistance. Snook responded by letter dated October 3, 2010, advising Justus that he should file a state habeas petition in the circuit court.

39

3. On November 17, 2010, Justus filed a state habeas petition in the circuit court, alleging, *inter alia*, ineffective assistance of counsel.

4. Then, on January 17, 2011, Justus amended his state habeas petition to add, among other claims, *the specific claim at issue here — that his counsel was ineffective in failing to perfect his appeal.* He argued that his lawyer "failed to perfect [his] appeal" and that the failure "was without legitimate strategic purpose . . . and therefore petitioner suffered prejudice by having his appeal . . . abandoned."

5. In early January 2012, Justus filed a second complaint against Snook with the Virginia State Bar "for failing to effect [his] direct appeal to the Virginia Supreme Court," and on January 30, 2012, he sent "follow-up correspondence certified mail, return receipt requested" when he had not received a timely response. While the Bar declined to take further action, the complaint appears to have prompted Snook to send Justus an affidavit in March 2012 to assist in Justus's effort.

6. Apparently around this same time, Justus "wrote to the mailroom at Wallen's Ridge State Prison . . . and requested confirmation that no legal mail was ever received by [him] from Mr. Snook during the dates of May 26, 2008, through June 2008," *i.e.*, the time period when he should have received a letter from Snook first informing him that his petition for appeal to the Virginia Supreme Court had not been filed. In response, the mailroom sent him a letter dated February 22, 2012, confirming it had no record of such a letter during that time in the incoming legal logbooks it maintains.

7. On June 28, 2012, Justus filed a second state habeas petition in the circuit court, which was pending until September 27, 2012.

8. At some point thereafter, Justus appealed the circuit court's denial of his second habeas petition by filing a petition with the Virginia Supreme Court, which was denied on June 20, 2013.

9. A few months after that, on September 24, 2013, Justus finally filed his federal habeas petition, presenting a single claim that he "was denied the right to appeal his convictions by way of ineffective assistance of coun[s]el because coun[s]el failed to perfect such appeal to the Virginia Supreme Court after being directed to do so."

This evidence of Justus's extensive litigation-related activity from May 2010 until September 2013 simply and effectively precludes his argument that his mental illness was so severe that it prevented him from also timely filing his federal habeas petition. Instead,

40

it demonstrates that he was capable of putting together relatively complicated legal filings and gathering evidence to support those filings. To be sure, he directed his attention during the time period to pursuing remedies in state court, rather than federal court, which turns out to have been a mistake. But it is well established that "even in the case of an unrepresented prisoner, ignorance of the law is not a basis for equitable tolling." *Sosa*, 364 F.3d at 512.

At bottom, I fail to see how the district court on remand could conclude that Justus lacked the *mental capacity* to file a habeas petition alleging the ineffective assistance of counsel claim at issue here within a year of discovering its factual basis in May 2010, when he *did* in fact file at least one habeas petition in state court alleging that precise claim within the one-year period. Thus, as in *Sosa*, I would conclude that a remand for further development of the record is unwarranted because the many steps Justus was able to take in "seeking to vacate or modify his sentence indicate quite clearly that his is not [the kind of] extraordinary case" where a petitioner's "profound mental incapacity" has prevented a timely filing. 364 F.3d at 513; *see also Conroy v. Thompson*, 929 F.3d 818, 821 (7th Cir. 2019) (concluding that "the district court was well within its discretion" in concluding that petitioner "failed to prove that extraordinary circumstances prevented him from timely filing" in part because his state-court filings during the relevant time period "show[ed] that [he] had the capacity to engage in the legal process"); *Obriecht v. Foster*, 727 F.3d 744, 751 (7th Cir. 2013) (emphasizing that the petitioner "filed direct and collateral appeals in state court [during the period in] which he assert[ed] that his mental health prevented him from" filing and that he had "offered no explanation for how he was able to file in those

41

cases but not in this one"); *Robison v. Hinkle*, 610 F. Supp. 2d 533, 540 (E.D. Va. 2009) ("A petitioner's ability to make other legal filings during the alleged period of his incompetency counsels strongly against allowing equitable tolling of [his] federal habeas petition").

Accordingly, I would affirm.