**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

_____

**No. 25-1304**

_____

CLEAR TOUCH INTERACTIVE, INC.,

Plaintiff - Appellant,

v.

THE OCKERS COMPANY; JOHN J. HOUSER; JASON HOUSER; TOUCHVIEW INTERACTIVE, INC.,

Defendants - Appellees.

_____

**No. 25-1374**

_____

CLEAR TOUCH INTERACTIVE, INC.,

Plaintiff - Appellant,

v.

THE OCKERS COMPANY; JOHN J. HOUSER; JASON HOUSER; TOUCHVIEW INTERACTIVE, INC.,

Defendants - Appellees.

_____

Appeal from the United States District Court for the District of South Carolina, at Greenville.  Kevin Frank McDonald, Magistrate Judge.  (6:21-cv-02208-KFM)

_____

Argued:  January 30, 2026                                 Decided:  April 1, 2026

_____

Before WYNN, HARRIS, and RUSHING, Circuit Judges.

_____

Affirmed by published opinion. Judge Wynn wrote the opinion, in which Judge Harris joined. Judge Rushing wrote a separate opinion concurring in part and dissenting in part.

_____

**ARGUED:** Joseph Owen Smith, SMITH HUDSON LAW, LLC, Greenville, South Carolina, for Appellant. Gregory J. English, WYCHE, P.A., Greenville, South Carolina, for Appellees. **ON BRIEF:** Joshua J. Hudson, SMITH HUDSON LAW, LLC, Greenville, South Carolina; John R. Perkins, Jr., PERKINS LAW FIRM, LLC, Greenville, South Carolina; Steven E. Buckingham, THE LAW OFFICE OF STEVEN EDWARD BUCKINGHAM, Greenville, South Carolina, for Appellant. Wallace K. Lightsey, James E. Cox, Jr., Graham M. Pitman, WYCHE, P.A., Greenville, South Carolina, for Appellees.

_____

WYNN, Circuit Judge:

In state court, the Ockers Company ("Ockers") sued Clear Touch Interactive, Inc. ("Clear Touch") for breach of contract. The parties settled that case and agreed to dismiss all possible counterclaims that could have been brought in that litigation. But just weeks later, Clear Touch brought intellectual-property claims against Ockers in federal court.

At summary judgment, the district court found that those claims were barred by the wide scope of the settlement agreement. We agree and thus affirm. For reasons stated below, we also affirm the various other orders raised on appeal.

I.

A.

Because the primary orders on appeal were at summary judgment, we recite the facts in the light most favorable to Clear Touch, the nonmovant.

Clear Touch designs and manufactures interactive technology products. Beginning in 2014, Clear Touch entered into reseller agreements with Ockers granting Ockers the exclusive right to sell, lease, install, and service its Clear Touch panels within certain designated territories throughout the United States.

In 2017, Clear Touch changed the terms of those agreements, revoking Ockers's exclusivity rights to sell within its territories. Shortly thereafter, Ockers owner John Houser and his son began developing a competing product to Clear Touch; they called it "TouchView."

In 2019, Clear Touch terminated Ockers as a reseller.

3

B.

In 2020, Ockers sued Clear Touch in state court in South Carolina. Ockers asserted claims for breach of contract of the reseller agreements, breach of contract accompanied by a fraudulent act, tortious interference with prospective contractual relations, violations of the South Carolina Trade Secrets Act, defamation, violations of the South Carolina Unfair Trade Practices Act ("SCUTPA"), and civil conspiracy.

Clear Touch attempted to remove that action to federal court on the basis of diversity jurisdiction. *See Ockers Co. v. Clear Touch Interactive, Inc.*, No. 6:21-cv-776, 2021 WL 1827181, at *1 (D.S.C. May 7, 2021). However, in a conversation between attorneys in that case, Clear Touch informed Ockers counsel Rita Bolt Barker that it also wanted the litigation in federal court in part because Clear Touch "intend[ed] to assert multiple intellectual property counterclaims, which would give rise to federal question jurisdiction." J.A. 200; J.A. 1135–37.[1]

But the district court ultimately remanded the action to state court. *Ockers Co.*, 2021 WL 1827181, at *4.

With the help of mediation on June 2, 2021, the parties agreed to settle the state-court action. They executed a settlement agreement, which contained several important provisions.

As relevant on appeal, the parties agreed to "release one another of any and all claims brought or which could have been brought, known or unknown, arising out of or

---

[1] Citations to the "J.A." refer to the Joint Appendix filed by the parties in this appeal.

relating to the subject matter of this lawsuit." J.A. 216. The parties further agreed that "the case is to be dismissed with prejudice." *Id.* In a handwritten portion after this phrase, the parties wrote that the dismissed claims "includ[ed] all possible claims and counterclaims." *Id.* Finally, Clear Touch agreed to modify the terms of its agreement with a different reseller, Pro AV, such that Pro AV would not be able to resell Clear Touch products in Massachusetts during the 2022 calendar year.

Two weeks later, on June 15, 2021, Clear Touch and Ockers executed a more detailed agreement that incorporated the prior settlement agreement by reference and spelled out the release more clearly.

First, the parties agreed to mutually release their claims. Specifically, Clear Touch agreed in Paragraph 3(b) to

> release and discharge [Ockers] and each of [its] representatives, predecessors, successors, current and former employees, agents, officers, directors, managers, principals, shareholders, assignees, attorneys, insurers, customers and end users . . . of and from any and all claims, demands, damages, debts, liabilities, accounts, reckonings, obligations, costs, expenses, liens, equitable relief, attorneys' fees, actions and causes of action of every kind and nature whatever, arising out of or relating to the subject matter of the Litigation prior to the Effective Date of this Agreement, known and unknown.

J.A. 211.

Separately, however, the parties also agreed in Paragraph 4 to, within three business days, "jointly file a stipulation of dismissal pursuant to South Carolina Rule of Civil Procedure 41(a)(1) dismissing with prejudice all possible claims and counterclaims that have or could have been brought against any Party as part of the Litigation." *Id.*

5

Despite signing that agreement, Clear Touch later refused to sign a dismissal of all possible counterclaims in state court. Instead, just three weeks later, Clear Touch sent a "Notice of Infringement of Registered Trademarks" to Houser on July 6, 2021. J.A. 218.

In response, on July 16, 2021, Ockers filed a motion in the state-court action to enforce the settlement agreement—specifically, its provision compelling Clear Touch to agree to file a dismissal of all possible counterclaims in the state-court action.

While that motion was pending, Clear Touch filed the present lawsuit in federal court on July 20, 2021, asserting various intellectual-property claims against Ockers, Houser, his son, and TouchView Interactive, Inc. (collectively, the "Ockers Defendants").

On initial review of the motion to enforce the settlement agreement, the state court noted that it looked like "Clear Touch has got buyer's remorse," and "if [Clear Touch] is now suing Ockers, and they could have brought these claims in the State Court action, then it looks like this agreement would encompass those claims at least as it relates to Ockers." J.A. 1122, 1131. The state court later entered an order dismissing the state-court action with prejudice, "including all possible claims and counterclaims that have or could have been brought against any Party as part of this action." J.A. 617.

C.

Clear Touch's federal action centered primarily on the alleged infringement of their intellectual property when the Ockers Defendants created a rival brand in TouchView. In its complaint, Clear Touch alleged not just past infringement of Clear Touch's marks but "willful and intentional conduct of *ongoing infringement* and other Lanham Act violations, which have caused, and *continue to cause*, irreparable injury to Clear Touch, Clear Touch's

6

customers, and the general public and [sought] to enjoin Defendants' future infringement." J.A. 298 (emphasis added).

The Ockers Defendants answered the complaint and asserted several counterclaims, many of which it had brought earlier in the state-court action.

The Ockers Defendants then moved for judgment on the pleadings, arguing that the prior settlement agreement's releases and the *res judicata* effect of the state court's dismissal of "all possible counterclaims" barred Clear Touch's claims in this suit from going forward. The district court partially agreed.

First, it found that, at least at the pleading stage, the claims against TouchView Interactive, Inc., were not necessarily barred by the settlement agreement, because that agreement did not name TouchView Interactive, Inc., as a party.

Second, the district court found that many of the claims—breach of the reseller agreement, unjust enrichment, conversion, tortious interference, and misappropriation of trade secrets—were covered by the release language in the settlement agreement and were therefore barred. However, it also found that the release language did not cover the trademark and dilution claims under the Lanham Act.

Finally, it considered the argument that *res judicata* separately barred Clear Touch from bringing its Lanham Act claims. But it ultimately found that the intent of the parties was not to include such claims in their agreement and allowed them to proceed "at this time." J.A. 646. The district court stuck by its ruling even on reconsideration but reminded the parties that Rule 54(b) of the Federal Rules of Civil Procedure allowed its decision to

7

"be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." J.A. 13, at Dkt. No. 47 (quoting Fed. R. Civ. P. 54(b)).

The Ockers Defendants amended their counterclaims, and Clear Touch moved for judgment on the pleadings. The district court granted that motion in part, finding (after reconsideration) that two of the five counterclaims were released in the settlement agreement. What remained were three counterclaims: breach of the settlement agreement, breach of the settlement agreement accompanied by a fraudulent act, and violation of SCUTPA, at least "to the extent it is grounded upon alleged breaches of the Settlement Agreement," and not the reseller agreements. J.A. 29, at Dkt. No. 158.

Following discovery, on August 26, 2024, this case was transferred by consent to Magistrate Judge Kevin McDonald.

The Ockers Defendants then filed two separate motions for summary judgment.

First, Ockers Defendant TouchView Interactive, Inc., filed an individual motion for summary judgment that argued that it was a mere shell organization that existed only on paper and, thus, that it did not actually own any trademarks or direct any activity that could infringe on another's intellectual property rights.

Separately, the other Ockers Defendants (Ockers and the Housers) moved for summary judgment on the grounds that all of Clear Touch's claims were barred by *res judicata* because Clear Touch could have brought the claims as counterclaims in the state-court action, and the state court had already dismissed all possible counterclaims in that action.

8

Judge McDonald granted TouchView's motion in full, agreeing that there was no evidence in the record that any of the Ockers business had been transferred to TouchView Interactive, Inc.

But he initially largely denied the other Defendants' motion.[2] In particular, the court found that *res judicata* did not bar Clear Touch from asserting its claims in this action because the release language in the settlement agreement applied only to claims "*arising out of or relating to the subject matter of the [prior state] Litigation.*" J.A. 2545.

### D.

So, the parties readied themselves for trial.

Two motions in limine ahead of trial are relevant on appeal. First, the Defendants moved to exclude former Ockers employee Paul Diiorio from testifying at trial because Clear Touch had disclosed him as a potential witness too late. Second, Clear Touch moved to exclude Ockers counsel Barker from testifying at trial because her dual role as counsel and witness would confuse the jury.

The district court scheduled both jury selection and a hearing on the motions in limine for November 25, 2024, with trial to start the following Monday.

On November 25, the jury was fully impaneled. The court then took up the motions in limine, noting *sua sponte* that the motion in limine regarding Barker "necessarily touches on the issue of *res judicata*, which has been raised." J.A. 2608. The court also noted that really "*res judicata* is something to be decided by the Court" and that under Rule 54(b) it

---

[2] The other Defendants' one victory was the district court granting it summary judgment on trademark dilution, which the district court found failed as a matter of law.

9

could revise its decision on the *res judicata* issue with help from Barker's testimony. J.A. 2609.

So the district court heard live testimony from Barker and other witnesses to aid in its motions in limine rulings, as well as its consideration of the *res judicata* issue. After a break, the court noted that when it made its prior summary judgment ruling on the *res judicata* issue, it "didn't have" the 30(b)(6) transcript of Clear Touch CEO Keone Trask, in which Trask appeared to admit knowing that Ockers was using the TradeView mark well before Clear Touch entered into the settlement agreement. J.A. 2675. The court also stated that it wanted to resolve the "obvious *res judicata* matter" to avoid discovering that the claims were barred by *res judicata* in the midst of a protracted trial. *Id.*

The next day, November 26, the district court reversed course from its earlier ruling and granted the Ockers Defendants' motion for summary judgment. In a written order that followed, the court provided two explanations. First, it had more carefully read what it called the "new evidence" of Trask's deposition and realized that Clear Touch knew about Ockers using the TouchView mark before signing the settlement agreement. J.A. 3118. And second, the court had made a "clear error" of law in conflating the settlement agreement's release language with its dismissal language. *Id.*

The effect of that last-minute ruling was dramatic. Because Clear Touch no longer had any live claims, Ockers became the plaintiff and Clear Touch the defendant, inverting what the jury had been told during jury selection.

10

Clear Touch attempted to appeal the decision to the Fourth Circuit in an emergency order, but we denied it. *See Clear Touch Interactive, Inc. v. The Ockers Co.*, No. 24-2184 (4th Cir. Dec. 2, 2024), Dkt. No. 9. Thus, the trial moved forward.

On December 2, the district court granted Ockers's motion to exclude Diiorio's testimony but denied Clear Touch's motion to exclude Barker's. At the close of Ockers's case-in-chief, Clear Touch moved for judgment as a matter of law on Ockers's counterclaims, but the district court rejected the motion.

Finally, after a five-day trial, the jury found Clear Touch liable for breach of contract and breach of contract accompanied by a fraudulent act.[3] It awarded Ockers $1,347,897 in actual damages and $1 million in punitive damages.

Thereafter, the district court denied Clear Touch's motions for a new trial and remittitur. Clear Touch timely appealed.

## II.

Clear Touch first appeals the trial court's summary-judgment order that found no genuine dispute of material fact that the TouchView corporate entity was a mere shell company and therefore could not infringe on Clear Touch's intellectual property.

We review summary-judgment orders de novo, viewing all facts and reasonable inferences in the light most favorable to the non-movant. *United States v. 8.929 Acres of Land in Arlington Cnty.*, 36 F.4th 240, 252 (4th Cir. 2022). "Summary judgment is appropriate 'if the movant shows that there is no genuine dispute as to any material fact

---

[3] The jury found Clear Touch not liable for violations of SCUTPA.

and the movant is entitled to judgment as a matter of law.'" *Id.* (quoting Fed. R. Civ. P 56(a)). Still, "[t]he mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986).

Here, there is no dispute that Houser incorporated TouchView Interactive, Inc., in the Commonwealth of Massachusetts in March 2020. The question is what, if anything, that corporate entity did once it was formed.

Houser stated in deposition testimony that he created this corporation "as part of [his] exit strategy in [his] retirement plans" so that eventually his son could take over this part of the larger Ockers business. J.A. 1555. But those plans never came to fruition. Instead, he stated in a declaration that TouchView Interactive, Inc., has no employees, no payroll, no place of business, and no assets. "It has never engaged in any commercial activity whatsoever, and has never realized any revenues, expenses, profits, or losses." J.A. 1047. And it "has never used any of the Ockers Marks for any activity of any nature." J.A. 1048.

In response, Clear Touch points to a few pieces of evidence that it says at least create a dispute of fact on whether TouchView Interactive, Inc., as a corporate entity directed some of the infringing activity. Principally, there were at least twelve reseller agreements executed between 2020 and 2021 that indicated "TouchView Interactive" as a party to the contract and included a signature block with the title "TouchView Interactive." *See, e.g.*, J.A. 2326. Those agreements also noted that "TOUCHVIEW is the exclusive owner of

12

various trademarks, service marks, trade names, logos and designs used from time to time by TOUCHVIEW in connection with the manufacture, sale or service of the Products, and the goodwill associated therewith." J.A. 1421.

Nevertheless, the district court found that TouchView was still due summary judgment for a few reasons:

> Specifically, there is no dispute that Ockers owns the accused Touchview Interactive marks [and] that Clear Touch was aware that Ockers was using the Touchview Interactive marks in late 2019 – before defendant Touchview was incorporated by defendant [Houser] on March 9, 2020. There is no evidence that the business has been transferred to Touchview. Moreover, despite over three years of litigation, Clear Touch has failed to present any evidence disputing defendant [Houser]'s testimony that Touchview has no assets; has never realized any revenues, expenses, profits, or losses; has never filed a tax return; and has no payroll.

J.A. 2557 (citations omitted).

Considering the full record, we agree with the district court. The evidence Clear Touch puts forward shows, at most, that Ockers was acting through its TouchView *brand* in conducting TouchView business. Even the reseller agreements never reference TouchView Interactive, Inc., as a corporate entity—only "Touchview" or "Touchview Interactive." Conversely, there is no evidence in the record to dispute the facts put forward by Ockers that The Ockers Company was the sole owner of the TouchView brand and that Touchview Interactive, Inc., itself had no assets and no employees as a corporate entity.

Accordingly, we affirm the district court's grant of summary judgment to TouchView Interactive, Inc., on the claims against it.

13

III.

Clear Touch next appeals the district court's *res judicata* ruling, which ultimately extinguished its claims against the remaining Defendants in this case. Clear Touch attacks this order both substantively and procedurally. That is, it argues that the district court committed substantive error in granting summary judgment on the merits and procedural error in reversing course on the eve of trial. We take each in turn.

A.

The district court granted summary judgment to Ockers and the Housers because Clear Touch's claims were barred by the *res judicata* effect of a prior state-court order. As above, we review the substance of that decision de novo.

*Res judicata*, or claim preclusion, applies when three elements are met: "There must be: (1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *SAS Inst., Inc. v. World Programming Ltd.*, 874 F.3d 370, 378 (4th Cir. 2017) (cleaned up).

However, "the traditional res-judicata inquiry is modified in cases where the earlier action was dismissed in accordance with a release or other settlement agreement." *U.S. ex rel. May v. Purdue Pharma L.P.*, 737 F.3d 908, 913 (4th Cir. 2013). In such cases, "the principles of *res judicata* apply (in a somewhat modified form) to the matters specified in the settlement agreement, rather than the original complaint." *Id.* (quoting *Norfolk S. Corp. v. Chevron, U.S.A., Inc.*, 371 F.3d 1285, 1288 (11th Cir. 2004)). That is, "the preclusive

14

effect of the earlier judgment is determined by the intent of the parties" in signing the settlement agreement. *Keith v. Aldridge*, 900 F.2d 736, 740 (4th Cir. 1990).

Ockers argues that the state-court order enforcing the parties' settlement agreement dismissed claims like the ones Clear Touch brings here with prejudice. Accordingly, the district court correctly gave *res judicata* effect to that prior state-court order. We agree and thus affirm.

The settlement agreement contained a release and a dismissal. The release language, found in Paragraph 3(b), required Clear Touch to

> release and discharge [Ockers] . . . of and from any and all . . . causes of action of every kind and nature whatever, arising out of or relating to the subject matter of the Litigation prior to the Effective Date of this Agreement, known and unknown.

J.A. 211. But that release did not cover Clear Touch's intellectual-property claims at issue here for two reasons. First, the alleged infringement on Clear Touch's marks did not arise out of the "subject matter of the Litigation" in state court. That litigation involved a dispute over a breach of the reseller agreements between Clear Touch and Ockers and had nothing to do with the later use of TouchView marks that Clear Touch alleged infringed on its property rights. Second, the alleged infringement occurred, at least in part, after the "Effective Date" of the settlement agreement because Clear Touch alleged *ongoing* infringement of its marks, in addition to past infringement.

Nevertheless, the parties separately agreed in Paragraph 4 to jointly dismiss "with prejudice all possible claims and counterclaims that have or could have been brought

15

against any Party as part of the Litigation." J.A. 211. That language was broader both in scope and in timeline than the release.

As to scope, the dismissal language sheds the requirement of the release that the counterclaims "aris[e] out of or relat[e] to the subject matter of the Litigation." J.A. 211. Instead, the parties agreed to dismiss, and the state court actually dismissed, with prejudice *all possible counterclaims* that could have been brought in the state-court litigation. That squarely includes the complaint Clear Touch brings here.

In its complaint, Clear Touch alleges state law unfair-competition claims and federal Lanham Act and intellectual-property claims. It is undisputed that state courts have concurrent jurisdiction over such claims. *See, e.g.*, *Riley v. Dozier Internet L., PC*, 371 F. App'x 399, 405 (4th Cir. 2010) ("[S]tate courts have concurrent jurisdiction under the Lanham Act."). And though the original state-court litigation focused on breach of the reseller agreements, South Carolina's rules of civil procedure plainly allow unrelated counterclaims like infringement to be brought even when they do not "aris[e] out of the transaction or occurrence that is the subject matter of the opposing party's claim." S.C.R. Civ. P. 13(b). The Clear Touch claims therefore fall within the scope of the dismissal language because they could have been brought in the state-court litigation.

The dismissal language is also broader than the release in terms of the timing of the claims it covers. The parties' release extended only to those claims that arose "prior to the Effective Date of th[e] Agreement." J.A. 211. But the dismissal language contains no such time bar.

16

Here, Clear Touch's complaint alleges ongoing infringement. We have held that each infringing act constitutes a distinct violation for purposes of accrual. *Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001). But as described above, what is dispositive here is the parties' intent when they signed their settlement agreement, and Clear Touch provides no reason to believe the parties intended their agreement to adopt or reflect our case law on application of statutes of limitations to infringement claims. In any event, while the language in the release was limited to claims arising "prior to the Effective Date of the agreement," the parties did not include such limiting language in the dismissal provision. Under South Carolina law, we must give meaning to that choice. *See Schulmeyer v. State Farm Fire & Cas. Co.*, 579 S.E.2d 132, 134 (S.C. 2003) ("The cardinal rule of contract interpretation is to ascertain and give legal effect to the parties' intentions as determined by the contract language.").

Here, it is enough that this precise Clear Touch complaint, which alleges ongoing infringement, could have been brought as a counterclaim in the state-court litigation. *Cf. JM Smith Corp. v. PC I Corp*, 892 F.2d 74, 1989 WL 152411 (4th Cir. 1989) (unpublished table decision) (affirming summary judgment in which court found settlement agreement covered "derivative works of [a] program that existed at the time of settlement" because the infringement was partially "the same misappropriation alleged by the plaintiff prior to the settlement agreement"); *MAS Assocs., LLC v. Venick*, No. 22-cv-3195, 2023 WL 4236194, at *8 (D. Md. June 28, 2023) (finding *res judicata* barred infringement claims because the "claims arise from the same transaction previously challenged, and [the plaintiff] could have brought them during its state court case"). The parties agreed to

17

dismiss claims like the ones Clear Touch brings here, and we must give *res judicata* effect to the state-court order dismissing them.[4]

Moreover, the plain language of the settlement agreement bars the Clear Touch complaint from moving forward. That conclusion is supported not only by the text itself, but it is especially compelling in light of the parties' evident intent in including this particular dismissal clause at the time and the context in which the settlement agreement was signed.

First, Ockers put on evidence that when the state-court litigation was filed, Clear Touch attorneys told Ockers that they were contemplating bringing federal intellectual-property counterclaims. Second, Ockers also put on evidence that Clear Touch had a pattern of doing exactly what it did here: settling claims on paper and then defying that settlement agreement by bringing intellectual-property claims weeks later. Finally, knowing that Clear Touch was contemplating bringing intellectual-property claims and that it had a history of skirting settlement agreements, Ockers added—in a last-minute handwritten modification to the settlement agreement—the broad language dismissing all possible counterclaims.

---

[4] Indeed, Clear Touch's complaint here challenges precisely the same "ongoing infringement" that Clear Touch already knew about at the time of the settlement agreement—and therefore could have brought as an ongoing infringement claim in the state-court action back then. *Compare* J.A. 298–13 (alleging ongoing infringement of four of Clear Touch's marks in specific ways), *with* J.A. 218–19 (July 2021 cease-and-desist letter from Clear Touch, sent just three weeks after signing of settlement agreement, objecting to ongoing infringement of same four marks in same ways), *and* J.A. 133–34 (emails showing that Clear Touch executives knew of this use of the marks since at least 2020).

Although we are obligated at summary judgment to view the facts in the light most favorable to Clear Touch, Clear Touch has put forth no evidence to meaningfully dispute the factual account of the parties' intent. Therefore, even viewing the record in the light most favorable to Clear Touch, we think it clear that Ockers demanded the insertion of this dismissal language in the agreement to broaden the settlement agreement beyond the narrow terms of the release.

Additionally, under South Carolina law,[5] we must also give special attention to the handwritten portion of the mediation agreement. *See Hawkins v. Greenwood Dev. Corp.*, 493 S.E.2d 875, 879 (S.C. Ct. App. 1997) (noting that if there is an inconsistency between handwritten and printed portions of a contract, the handwritten provision prevails). And it is that added language that protects Ockers from the suit Clear Touch brings here.

We also think it clear that the *state court* intended to dismiss this very Clear Touch complaint when it entered its order dismissing all possible counterclaims in the state-court litigation. Indeed, that was the whole point. When Clear Touch refused to sign a stipulation dismissing all possible counterclaims and instead filed the present intellectual-property

---

[5] Other jurisdictions follow the same rule. *E.g.*, *B. Elliott (Canada) Ltd. v. John T. Clark & Son of Md., Inc.*, 704 F.2d 1305, 1308 (4th Cir. 1983) ("According to general rules of contract interpretation, separately negotiated or added terms will prevail over the conflicting printed part of a contract.") (citing *Schapiro v. Chapin*, 151 A. 44, 46 (Md. 1930)); *McDaniel v. Georgia Consol. Contracting Co.*, 110 F. Supp. 751, 753 (S.D. Ga. 1952) ("[W]here parts of a contract are in writing and other parts are printed, the parts in writing are to be given the greater weight." (cleaned up)), *aff'd*, 202 F.2d 748 (5th Cir. 1953); *In re Spagnol Enters., Inc.*, 81 B.R. 337, 352 (W.D. Pa. 1987) ("When a contract consists of parts both handwritten and form printed, the handwritten words are to be given greater weight, as they presumably constitute the deliberate and clear intent of the contracting parties.").

action in federal court, Ockers moved to enforce the terms of the settlement agreement. The state court recognized it had no jurisdiction to actually dismiss Clear Touch's federal complaint. But it nevertheless observed that Clear Touch had filed this complaint in apparent defiance of the settlement agreement, that it was a "fair assumption" on Ockers's part that the agreement covered this complaint, and ultimately that it appeared Clear Touch was simply getting a case of "buyer's remorse." J.A. 1122, 1131.

Overall, therefore, the plain language of the settlement agreement and the intent of the parties in signing it lead us to conclude that, because this exact complaint could have been brought as a counterclaim in the prior state-court litigation, it is barred by the *res judicata* effect of the state court's order dismissing all possible counterclaims with prejudice.

We therefore conclude that the district court was correct to conclude that Ockers was entitled to summary judgment on the *res judicata* issue.

## B.

Putting the substance of the summary-judgment order aside, Clear Touch also appeals the procedural mechanism by which the district court entered the revised summary-judgment order: Rule 54(b). In other words, Clear Touch argues that the district court violated its procedural rights by changing course on *res judicata* so late in the game, which required the court to satisfy a more stringent standard to grant summary judgment than if it had rendered that decision in the first instance.

20

After reviewing the district court's revision under Rule 54(b) for abuse of discretion, *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017), we find no abuse of discretion here and therefore affirm.

Regarding the district court's entry of a *final* order, a party may move the court to alter or amend the judgment under Rule 59(e) or for relief from the judgment under Rule 60(b). Rule 59(e) motions must be filed within 28 days and can be granted "(1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." *Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). Rule 60(b) motions must be made "within a reasonable time," Fed. R. Civ. P. 60(c), and are granted only when the moving party demonstrates timeliness, a meritorious defense, a lack of unfair prejudice to the opposing party, and exceptional circumstances, *Justus v. Clarke*, 78 F.4th 97, 105 (4th Cir. 2023). In general, we have held, "reconsideration of a judgment after its entry is an extraordinary remedy which should be used sparingly." *Pac. Ins. Co.*, 148 F.3d at 403 (quotation omitted).

But a district court has much more flexibility in reconsidering its *nonfinal* orders under Rule 54(b), as the court did here.

Rule 54(b) allows an order that "adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties" to be "revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b). Accordingly, "a district court retains the power to reconsider and modify its interlocutory judgments, including partial summary judgments, at any time prior to final

21

judgment when such is warranted." *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 514–15 (4th Cir. 2003). Rule 54(b) thus allows district courts "broader flexibility" than Rules 59(e) and 60(b) to revise their prior orders "as the litigation develops and new facts or arguments come to light." *Carlson*, 856 F.3d at 325. This is because "[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under law." *Am. Canoe Ass'n*, 326 F.3d at 515.

Still, reconsideration under Rule 54(b) is "not limitless." *Carlson*, 856 F.3d at 325. Specifically, we have cabined district courts to revising their orders in three circumstances: where there is (1) substantially different evidence discovered during litigation, (2) an intervening change in law, or (3) clear error causing manifest injustice. *Id.* Though "[t]his standard closely resembles the standard applicable to motions to reconsider final orders pursuant to Rule 59(e)," *id.*, the standard here is not as "strict," *Am. Canoe Ass'n*, 326 F.3d at 514. Primarily, the evidentiary standard under Rule 54(b) "departs from [the final order] standard by accounting for potentially *different* evidence discovered during litigation as opposed to the discovery of *new* evidence not available at trial." *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 257 (4th Cir. 2018) (emphasis added) (quoting *Carlson*, 856 F.3d at 325).

The district court departed from its prior ruling for two permissible reasons: substantially different evidence emerged, and its prior ruling contained a clear error of law causing manifest injustice.

22

1.

As to the emergence of substantially different evidence, the district court relied on two different forms of substantially different evidence when it revised its nonfinal summary-judgment order.

First, when making its initial *res judicata* ruling, the district court "didn't have" the deposition of Clear Touch CEO Trask, who admitted that Clear Touch knew about Ockers using the mark "TouchView" well before signing the settlement agreement. J.A. 2675; J.A. 3126.

Second, the district court found the *res judicata* issue worth "revisiting" after hearing live motion-in-limine testimony from Ockers attorney Barker. J.A. 2675. Barker testified that "Clear Touch said it had intellectual property counterclaims to allege in [the state-court litigation] that would give them federal question jurisdiction." J.A. 2625. Barker corroborated that testimony with a contemporaneous email (seen by the court for the first time in the motion-in-limine hearing) that Barker sent to her co-counsel in which she relayed that Clear Touch stated it "intend[ed] to assert multiple intellectual property counterclaims" against Ockers in the state-court litigation. J.A. 2781.

Taken together, the substantially different evidence available to the district court was more than enough to justify revisiting the summary-judgment order decision. Both the Trask deposition and the Barker testimony were critical to the district court's analysis because they shed light on the intent of the parties in crafting the handwritten portion of the settlement agreement. If Clear Touch already knew about the TouchView brand when it signed the settlement agreement, and if Clear Touch's counsel explicitly contemplated

23

bringing intellectual-property counterclaims in state court, it follows that such counterclaims "could have been brought" in the state-court litigation. J.A. 3126.

Especially in light of the laxer evidentiary standard for revisions to nonfinal orders under Rule 54(b), we find no abuse of discretion in the district court revising its decision after reviewing such substantially different evidence.

2.

Independently, the district court did not abuse its discretion in revising its summary-judgment order because there was also clear error in the district court's prior *res judicata* ruling that caused manifest injustice to Ockers.

Initially, the district court denied Ockers's motion for summary judgment because Clear Touch's intellectual-property and unfair-competition claims did "not depend upon the parties' relationship pursuant to the reseller agreements and d[id] not arise from or necessarily relate to the [state-court action]." J.A. 2545–46. But, as the district court later realized, and as we have analyzed extensively above, that was clear error because it conflated two distinct sections of the settlement agreement: the release and the dismissal.[6]

---

[6] Our caselaw of late has begun to suggest that "clear error" under Rule 54(b) must "be so 'dead wrong' that it strike[s] us as wrong with the force of a five-week-old, unrefrigerated dead fish," *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 414 (4th Cir. 2025) (quoting *U.S. Tobacco Coop.*, F.3d at 258), importing this standard from the very different contexts of prior *appellate* decisions, *TFWS, Inc. v. Franchot*, 572 F.3d 186, 194 (4th Cir. 2009), and our own clear-error review of *factual* findings by the district court, *Bellsouth Telesensor v. Info. Sys. & Networks Corp.*, 65 F.3d 166, 1995 WL 520978, at *5 n.6 (4th Cir. 1995) (per curiam) (unpublished table decision).

We have our doubts about the appropriateness of such a high bar in this context and the inflexibility to which it condemns district courts when they realize they have made legal

We also think it obvious that having to defend a claim at trial that was covered by a prior settlement agreement would cause a party manifest injustice.

So, though the district court was within its rights to revise its order solely on the grounds of substantially different evidence, it also acted within its discretion in finding that allowing settled claims to move forward would have been clear error causing manifest injustice.

Here, on the eve of a trial that he inherited from a colleague, Judge McDonald discovered that upon further review of the evidence, Clear Touch's intellectual-property claims were barred by *res judicata* based on the parties' prior agreement to dismiss all possible counterclaims in the state-court action. He contemplated allowing Clear Touch's claims to move forward anyway. After all, a jury had already been impaneled, and the parties had prepared for months for a particular kind of trial.

But rather than allow his mistake to metastasize, he decided, instead, to recognize the error and rule as a matter of law that Clear Touch's claims were, in fact, barred by *res judicata*. This path, he noted, was not perfect. But it would prevent the parties from "get[ting] to the end of a trial and [having the] obvious res judicata matter be presented in the course of a lengthy trial and you-all having done this only to have your claims dismissed. I just think it's fair to both sides that I deal with this upfront." J.A. 2675.

---

errors. Still, in this case, we are satisfied that the original district court opinion was not only wrong but "dead wrong"—because it rendered an entire section of the settlement agreement superfluous.

Far from being an abuse of discretion, Judge McDonald's decision was laudable and led to the most efficient use of judicial resources.

We therefore affirm the summary-judgment order that barred Clear Touch's claims.

IV.

Clear Touch also appeals two motions in limine relating to the exclusion and inclusion of certain witnesses at trial.

This Court reviews a district court's decision to exclude or include a particular witness at trial for abuse of discretion. *United States v. Johnson*, 617 F.3d 286, 292 (4th Cir. 2010).

A.

Clear Touch first appeals the district court's decision to exclude its witness, Paul Diiorio, whom the district court found had been untimely disclosed to Defendants.

"A party that fails to provide [witness] disclosures unfairly inhibits its opponent's ability to properly prepare, unnecessarily prolongs litigation, and undermines the district court's management of the case." *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278 (4th Cir. 2005). Therefore, Rule 37(c)(1) of the Federal Rules of Civil Procedure requires witness exclusion for untimely disclosure, even rebuttal witnesses, "unless the violation is substantially justified or harmless." *Nelson-Salabes, Inc. v. Morningside Dev., LLC*, 284 F.3d 505, 512 n.10 (4th Cir. 2002).

District courts retain "broad discretion" to determine whether an untimely disclosure is substantially justified or harmless. *Benjamin v. Sparks*, 986 F.3d 332, 343 (4th Cir. 2021). When exercising this discretion, district courts may consider the surprise to the

26

opposing party, the ability to cure that surprise, the disruption to the trial, the importance of the evidence, and the explanation for nondisclosure. *S. States Rack & Fixture, Inc. v. Sherwin-Williams Co.*, 318 F.3d 592, 597 (4th Cir. 2003). The party requesting untimely disclosure has the burden of demonstrating that these factors support allowing the witness to testify. *Wilkins v. Montgomery*, 751 F.3d 214, 222 (4th Cir. 2014).

Here, the parties finished discovery on July 1, 2024, and were preparing for trial in early December. Nearly three months after the discovery deadline, Clear Touch served a supplement to its Rule 26(a)(1) disclosure and named Diiorio as a witness for the first time. In the motions-in-limine hearing, the district court warned Clear Touch it was "pretty firm on . . . meeting the deadlines," J.A. 3049, and eventually granted the motion to exclude Diiorio. The court noted that the late disclosure meant that Clear Touch had "deprived Ockers of the opportunity to depose [Diiorio], learn his expected testimony, prepare to cross-examine him, and present its case to account for his expected testimony." J.A. 4166.

We find no abuse of discretion in that decision.

As a former Ockers employee, Diiorio did have some value to Clear Touch as a witness: He apparently would have served as a rebuttal witness to Ockers's damages witness. But his late disclosure came as a surprise to Ockers, which was robbed of the opportunity to depose him and to properly prepare for cross-examining him at trial. Balancing those interests, the district court acted within its discretion in determining that there was no practical way to cure such a prejudice in time for trial.

B.

Clear Touch also argues that the district court erred in denying its motion in limine to exclude Rita Bolt Barker from testifying at trial. Again, this decision is reviewed for abuse of discretion.

Ockers offered Barker, an attorney at the firm representing Ockers, as a fact witness to testify to two critical parts of Ockers's counterclaims. First, she would (and did) testify that Clear Touch contemplated bringing intellectual-property counterclaims in the state-court action that could mirror the very claims Clear Touch impermissibly brought in this action. Such testimony was relevant to determining whether the claims Clear Touch eventually brought in this action were possible counterclaims to the state-court action and thus barred by the settlement agreement.

Second, Barker would (and did) testify that Clear Touch had engaged in a pattern of filing lawsuits barred by settlement agreements in the past. That testimony was relevant in particular to Ockers's SCUTPA claim, which required Ockers to show that Clear Touch's "unlawful trade practice is capable of repetition," which it could prove "by showing that . . . the same kind of actions occurred in the past, thus making it likely the action will continue absent some deterrence." J.A. 4005 (jury instructions).

Still, Clear Touch argued that Barker's dual role as attorney and fact witness would be unfairly prejudicial to Clear Touch and confusing for the jury, citing South Carolina's Rules of Professional Conduct, which state that "[a] lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness," absent some exceptions. S.C.R.P.C. 3.7(a).

28

While generally a concern, we have advised that the solution for such a conflict is for the attorney in question to withdraw from representation and testify only as a fact witness. *See United States v. Freitekh*, 114 F.4th 292, 313 (4th Cir. 2024). That is because "acting solely as a witness significantly reduces possible confusion of the roles of advocate and witness and hostility between parties." *Brown v. Daniel*, 180 F.R.D. 298, 301 (D.S.C. 1998) (applying South Carolina law and refusing to disqualify entire firm if necessary witness withdrew as trial counsel). That is precisely what occurred here: Rather than advocate for her client from counsel table, Barker withdrew from representation ahead of trial and acted solely as a fact witness.

Therefore, we find no abuse of discretion in the district court's decision to allow Barker to testify at trial.

V.

Finally, Clear Touch appeals the district court's denial of its motions for judgment as a matter of law and for a new trial. We affirm.

A.

At the close of Ockers' case-in-chief, Clear Touch moved for judgment as a matter of law, arguing that Ockers had not presented sufficient evidence to support its claim for breach of contract accompanied by a fraudulent act.

"Judgment as a matter of law is proper when, without weighing the credibility of the evidence, there can be but one reasonable conclusion as to the proper judgment," and such judgments are reviewed by this Court de novo. *U.S. ex rel. DRC, Inc. v. Custer Battles, LLC*, 562 F.3d 295, 305 (4th Cir. 2009) (quoting *Chaudhry v. Gallerizzo*, 174 F.3d 394,

29

405 (4th Cir. 1999)). A reviewing court need only determine "whether there was a legally sufficient evidentiary basis for a reasonable jury to render the verdict that it did." *Sardis v. Overhead Door Corp.*, 10 F.4th 268, 279 (4th Cir. 2021) (cleaned up).

Under South Carolina law, a plaintiff alleging breach of contract accompanied by a fraudulent act must show "(1) breach of contract, (2) fraudulent intent relating to the breach, and (3) a fraudulent act accompanying the breach." *Edens v. Goodyear Tire & Rubber Co.*, 858 F.2d 198, 202 (4th Cir. 1988) (citing *Floyd v. Country Squire Mobile Homes, Inc.*, 336 S.E.2d 502, 503 (S.C. Ct. App. 1985)). Breach of contract, in turn, requires "the existence of the contract, its breach, and the damages caused by such breach." *S. Glass & Plastics Co. v. Kemper*, 732 S.E.2d 205, 209 (S.C. Ct. App. 2012).

Clear Touch argues that Ockers failed to present evidence sufficient to show a fraudulent act and damages. We disagree.

As to the fraudulent act, Ockers first put on evidence at trial that Clear Touch signed the settlement agreement with no intent to abide by its terms. That evidence included a letter Clear Touch sent to Ockers just weeks after signing the agreement, as well as evidence that Clear Touch refused to agree to the stipulated dismissal after signing the agreement. Separately, Ockers also put on evidence that Clear Touch had falsely represented to customers in Massachusetts that Pro AV was still an authorized reseller in that state in 2022, despite the parties agreeing in the settlement agreement to suspend sales through Pro AV that year. Together, these were legally sufficient to show that Clear Touch had engaged in a fraudulent act that accompanied the breach.

30

As to damages, Ockers offered expert testimony regarding the amount of sales Ockers lost to competitors in Massachusetts due to Clear Touch's failure to end its reseller agreement with Pro AV. Clear Touch argues that the expert's estimate of $1,863,478 was inflated. But the jury returned a verdict of actual damages substantially lower than that estimate: $1,347,897. Additionally, the lost sales were not the only damages the jury considered. Ockers also put on evidence from its CEO, Houser, that the breach caused Ockers substantial damages to reputation and attorney's fees in litigating the breach. Ockers's evidence was more than sufficient to support the jury's actual damages calculation.

Accordingly, the district court did not err in denying the motion for judgment as a matter of law.

## B.

After the jury returned its verdict, Clear Touch moved for a new trial, which the district court denied. Clear Touch appeals that denial, primarily on the grounds that the court's late *res judicata* ruling "irreparably prejudiced Clear Touch and denied it a fair trial." Opening Br. at 43.

We review a denial of a motion for a new trial under a "deferential abuse-of-discretion standard, reversing the court's judgment only in 'exceptional circumstances.'" *Hicks v. Ferreyra*, 64 F.4th 156, 171 (4th Cir. 2023) (quoting *Minter v. Wells Fargo Bank, N.A.*, 762 F.3d 339, 346 (4th Cir. 2014)). "A district court may grant a new trial only if the verdict: (1) is against the clear weight of the evidence; (2) is based upon false evidence; or (3) will result in a miscarriage of justice." *U.S. Equal Emp. Opportunity Comm'n v. Consol*

31

*Energy, Inc.*, 860 F.3d 131, 145 (4th Cir. 2017). Overall, "the crucial inquiry is whether an error occurred in the conduct of the trial that was so grievous as to have rendered the trial unfair." *Hicks v. Anne Arundel County*, 110 F.4th 653, 658 (4th Cir. 2024) (quotation omitted).

Clear Touch's argument for a new trial hinges entirely on the district court's *res judicata* ruling. Prior to the court's revised ruling, the jury was told that Clear Touch was the plaintiff in this case and Ockers the defendant. When the jury returned, they were informed that the sides had swapped and that the court had dismissed Clear Touch's claims. Clear Touch now argues (1) that the timing of the *res judicata* decision stripped it of the ability to prepare for trial, (2) that the ruling tainted the jury's impartiality, (3) that the prejudice it caused Clear Touch was not adequately cured by the court's limiting instructions, and (4) that the court erred in failing to impanel a new jury.

As we have already noted, we believe that the district court ruled correctly on the merits of the *res judicata* claim. That is, Clear Touch's claims were barred by the settlement agreement, and the district court properly granted summary judgment to Ockers, setting the trial up only for Ockers' counterclaims. And while, unquestionably, the late ruling caused some prejudice to Clear Touch in the preparation of its defense at trial, when evaluating the trial as a whole, we do not believe that the court abused its discretion in conducting the trial.

First, Clear Touch has waived any argument that it should have been given more time to prepare or an entirely new jury—because it never asked for such relief below. *See Hicks v. Ferreyra*, 965 F.3d 302, 310 (4th Cir. 2020) ("[T]his court does not consider issues

32

raised for the first time on appeal, absent exceptional circumstances." (cleaned up)). In fact, when the court was discussing the impact of this decision on the timing of trial, the court opted to give the parties an additional day to prepare (moving trial from Monday to Tuesday), a proposal which Clear Touch's attorney accepted by responding, "I don't believe there would be any prejudice to anyone if we looked at a Tuesday start date." J.A. 3043*; see United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994) (noting that an appellant "cannot complain of error which he himself has invited" (quoting *Shields v. United States*, 273 U.S. 583, 586 (1927)).

Second, to the extent the late ruling caused any prejudice by influencing the jury, who had initially been told Clear Touch was the plaintiff in this case, the district court did not abuse its discretion in mitigating that prejudice with a curative instruction. Once the jury returned the following week, the district court addressed the obvious changed circumstances directly. After noting that the sides had switched and that he had dismissed Clear Touch's claims since the jury last entered the courtroom, Judge McDonald instructed the jury that

> these legal rulings made by me should not influence your consideration of this case. I am called upon to make legal rulings, and that sometimes touches on the evidence. But you should not let the fact that I ruled one way or another on these issues or claims to have an effect on your ability to be fair and impartial, and to decide the case solely on the facts as you find them to be from the testimony and evidence presented in this trial, coupled with the law as I will instruct you.

33

J.A. 3180. "[I]t is well settled that a trial court has broad discretion in framing its instructions to a jury." *Volvo Trademark Holding Aktiebolaget v. Clark Mach. Co.*, 510 F.3d 474, 484 (4th Cir. 2007).

Here, the court addressed the last-minute reversal of parties head on and asked the jury not to allow that fact to taint their view of the case. While no instruction could perfectly cure all prejudice, "[w]e presume that a jury follows a curative instruction" absent strong evidence otherwise. *Consol Energy*, 860 F.3d at 146. Accordingly, we hold that such an instruction adequately guarded against the risk that the ruling would taint the jury's understanding of the law and the facts in this case.

We affirm the denial of the motion for a new trial.

## VI.

For the foregoing reasons, the district court's judgment is affirmed.

*AFFIRMED*

RUSHING, Circuit Judge, concurring in part and dissenting in part:

I agree with the majority that the district court properly granted summary judgment to TouchView Interactive, Inc. on all claims. I also agree that the district court did not abuse its discretion in ruling on the two motions in limine, and that we should affirm the district court's denial of Clear Touch's motions for judgment as a matter of law and a new trial. Regarding the res judicata ruling discussed in Part III of the majority opinion, however, I would reverse in part.

As an initial matter, the district court may have abused its discretion in reconsidering its initial summary judgment ruling at all. The evidence the majority cites as justifying reconsideration is not "'substantially different'" from the evidence that was before the district court at summary judgment. *Carlson v. Bos. Sci. Corp.*, 856 F.3d 320, 325 (4th Cir. 2017) (quoting *Am. Canoe Ass'n v. Murphy Farms, Inc.*, 326 F.3d 505, 515 (4th Cir. 2003)). Right before the district court's reconsideration order, Ockers attorney Barker testified that, during the state-court litigation, "Clear Touch said it had intellectual property counterclaims to allege in that [litigation]." J.A. 2625. An email exhibit corroborated her testimony. However, a declaration from Barker, submitted at summary judgment, said the exact same thing. *See* J.A. 1135–1136 ¶ 4 ("During that conversation, one of Clear Touch's attorneys stated that . . . Clear Touch had federal intellectual property counterclaims that it wished to pursue against Ockers."). Defendants also submitted for the first time right before the district court's reconsideration order an excerpt from Clear Touch CEO Trask's deposition, in which Trask admitted that Clear Touch knew before the settlement agreement was signed that Ockers was using the TouchView mark. *See* J.A. 3126. But,

35

again, a declaration from Ockers owner Houser—submitted at summary judgment with an email attached as an exhibit—showed the exact same thing. *See* J.A. 1047 ¶ 5 ("Clear Touch . . . was aware that Ockers was using the [TouchView] Marks then, which Clear Touch admitted in its deposition and in the emails attached hereto as Exhibit A . . . ."); ECF No. 141-2 at 8 (reproduced at J.A. 133) (email from Clear Touch employee to Trask stating, "[a]t MassCue in Nov last year [i.e., November 2019] they [Ockers] had TouchView on display in their booth").[1]  The "substantially different evidence" rationale thus fails.  And though I agree with the majority that the district court's initial summary judgment ruling was at least partially incorrect, it was not "so 'dead wrong' that it 'strike[s] [me] as wrong with the force of a five-week-old, unrefrigerated dead fish.'"  *Chavez-Deremer v. Med. Staffing of Am., LLC*, 147 F.4th 371, 414 (4th Cir. 2025) (quoting *U.S. Tobacco Coop. Inc. v. Big S. Wholesale of Va., LLC*, 899 F.3d 236, 258 (4th Cir. 2018)).

That said, "'[t]he ultimate responsibility of the federal courts, at all levels, is to reach the correct judgment under the law.'"  *Nadendla v. WakeMed*, 24 F.4th 299, 304 (4th Cir. 2022) (quoting *Am. Canoe*, 326 F.3d at 515–516).  The district court could have granted judgment as a matter of law on Clear Touch's settlement-barred claims during or after trial, reaching the same result in a less efficient manner.  So any procedural error on this front appears harmless.

---

[1] Indeed, based on Houser's declaration and the attached exhibit, the district court found in its initial summary judgment order that "there is no dispute that Clear Touch was aware that Ockers was using the Touchview Interactive marks in late 2019." J.A. 2557.

36

On the merits of whether the settlement agreement actually barred all of Clear Touch's claims, I would reverse as to one small sliver: Clear Touch's trademark-infringement claims based on infringing conduct occurring after the date of the settlement agreement.[2]  The majority is correct that the release provision in the settlement agreement contains temporal language that the dismissal provision does not: "'prior to the Effective Date of th[e] Agreement.'"  Maj. Op. 16 (quoting J.A. 211).  But the dismissal provision contains language that accomplishes the same thing as that temporal language—it dismisses "all possible claims and counterclaims that have or could have been brought" in the state-court litigation.  J.A. 211.  Clear Touch's claims based on acts occurring *after* the settlement agreement obviously could not have been brought as part of the settled litigation. *See Lyons P'ship, L.P. v. Morris Costumes, Inc.*, 243 F.3d 789, 797 (4th Cir. 2001) (explaining that each infringing act "should be considered separately under an infringement analysis").  The district court therefore erred in granting summary judgment to Defendants on those claims.

The parties could have written the settlement agreement to say that Clear Touch was dismissing all infringement claims that it "has or hereafter may have." *See, e.g., Chaparral Commc'ns v. Boman Indus., Inc.*, 873 F.2d 1452 (Table), 1989 WL 36842, at *2 (Fed. Cir. 1989) (finding continuing trademark violations released based on agreement releasing claims that a party "now has or hereafter may have").  But that's not what the settlement

---

[2] Clear Touch's opening brief argues only that "[t]he settlement agreement did not bar post-settlement *infringement* claims."  Opening Br. 41 (emphasis added and italics removed).  Clear Touch does not meaningfully extend that argument to other claims.

37

agreement says.  Instead, it turns on whether claims "could have been brought" in the state-court litigation.  J.A. 211.  Because at least some of Clear Touch's claims could not have been brought in that litigation, I would reverse the district court's grant of summary judgment in part.